Benjamin A. BERRY,
Petitioner-Appellant,

v.

C. Paul PHELPS,  Secretary of Department of Corrections and Hilton Butler, Warden of Louisiana State Prison, Angola, Louisiana, Respondents-Appellees.

No. 87–3408.

United States Court of Appeals, Fifth Circuit.

June 5, 1987.

---

Samuel S. Dalton, Jefferson, La., for petitioner-appellant.

William J. Guste, Jr., Atty. Gen., New Orleans, La., John Mamoulides, Dist. Atty., Gretna, La., for respondents-appellees.

Before GARWOOD, JOLLY and DAVIS, Circuit Judges.

PER CURIAM:

Benjamin A. Berry applies for a certificate of probable cause to authorize appeal to this court from a judgment of the district court denying his third federal petition for a writ of habeas corpus. Berry also seeks a stay of execution.

Berry raises two issues on appeal: (1) whether the prosecutor's reference during closing argument to the availability of appellate review violated federal due process, see *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (*Caldwell* claim); and (2) whether the Louisiana capital sentencing statute is unconstitutional because it allows the jury to base its sentence on aggravating factors that duplicate the elements of the underlying offense, see *Collins v. Lockhart*, 754 F.2d 258 (8th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985) (*Collins* claim). We agree with the district court that Berry has not made a substantial showing of the denial of a federal right; accordingly we deny a stay of execution and deny the application for certificate of probable cause.

## I.

Berry was sentenced to death by electrocution after his conviction for the first degree murder of Robert Cochran, a Jefferson Parish Deputy Sheriff. Berry shot Cochran while Berry and others were attempting to commit an armed bank robbery. A more detailed account of the facts surrounding Berry's crime is provided in *State v. Berry*, 391 So.2d 406, 409 (La. 1980), *cert. denied*, 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981). Berry is now scheduled to be executed on June 7, 1987.

The Louisiana Supreme Court affirmed Berry's conviction and sentence on direct appeal. *State v. Berry*, 391 So.2d 406 (La. 1980). The Louisiana Supreme Court also denied Berry's first state petition for habeas corpus. *State v. Berry*, 430 So.2d 1005 (La.1983).

Following the denial of habeas relief in the state court, Berry filed his first petition for federal habeas relief and raised eight claims; he included a *Caldwell* claim but did not include a *Collins* claim. The district court denied relief on all claims and Berry appealed that denial to this court. On appeal, Berry complained of the district court's denial of only two of the claims presented in his petition: ineffective assistance of counsel and exclusion of prospec-

tive jurors opposed to the death penalty. We rejected Berry's arguments on the two claims he presented to us and affirmed the district court's denial of habeas relief. *Berry v. King*, 765 F.2d 451 (5th Cir.1985).

In Berry's second federal habeas round, he raised a single issue: whether the State of Louisiana discriminatorily administered its death penalty against defendants accused of killing Caucasians. See *McCleskey v. Kemp*, — U.S. —, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). Berry failed to raise either of the two claims he presents to us today. Berry's second petition for federal habeas relief was denied by the district court, *Berry v. Phelps*, 639 F.Supp. 1515 (E.D.La.1986), and we affirmed, *Berry v. Phelps*, 795 F.2d 504 (5th Cir.1986).

Berry's instant federal habeas petition—his third—was denied by the district court in an oral opinion on June 3, 1987. The district court dismissed the petition based on the abuse of the writ doctrine. Rule 9(b), 28 U.S.C. foll. § 2254. This appeal followed.

## II.

Berry now argues that the prosecutor's closing statement during the sentencing phase of his trial violated *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). *Caldwell* held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328–29, 105 S.Ct. at 2639. In *Caldwell*, the prosecutor told the jury that "your decision is not the final decision.... Your job is reviewable." *Id.* at 325, 105 S.Ct. at 2637.

We need not reach the merits of this argument, however, because Berry failed to raise these claims in his second federal writ application. We agree with the district court that the present assertion of this claim constitutes an abuse of the writ. Rule 9(b), 28 U.S.C. foll. § 2254. We further agree that it is appropriate to bar the claim on that ground.

It is well settled that "the piecemeal presentation of post-conviction attacks on confinement cannot be tolerated." *Daniels v. Blackburn,* 763 F.2d 705, 706 (5th Cir. 1985). *Woodard v. Hutchins,* 464 U.S. 377, 104 S.Ct. 752, 78 L.Ed.2d 541 (1984). Berry's attempt to raise in this habeas petition the *Caldwell* claim is a clear attempt to present piecemeal his post-conviction attack; it therefore is an abuse of the writ.

Berry has been represented by counsel at every step of this litigation. Counsel argued on direct appeal to the Louisiana Supreme Court that the trial court erred in allowing the prosecutor to suggest that the jury's imposition of the death penalty was subject to appellate review. Counsel raised the same issue in his first state habeas petition and again in his first federal habeas petition.[1] Thus, Berry and his counsel were well aware of this claimed error. In June 1985, the Supreme Court announced its decision in *Caldwell* and explicitly held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that a responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Caldwell,* 472 U.S. at 328–29, 105 S.Ct. at 2639. Thus, in the unlikely event that counsel was entitled to harbor any reservations about the legitimacy of such an argument, see *Maggio v. Williams,* 464 U.S. 46, 54–56, 104 S.Ct. 311, 315–17, 78 L.Ed.2d 43 (1983) (Stevens, J., concurring); *Moore v. Blackburn,* 774 F.2d 97 (5th Cir.1985), such reservations were laid to rest by *Caldwell.*

Notwithstanding the unambiguous teaching of *Caldwell,* when Berry filed his second writ application in July 1986, more than one year from the date *Caldwell* was announced, Berry did not present the *Caldwell* claim.

Competent counsel would have been aware of *Caldwell* in July of 1986; we therefore agree with the district court that

Berry cannot excuse his failure to include a *Caldwell* claim predicated on the argument that he was unaware of the *Caldwell* decision. As we recently stated in *Daniels v. Blackburn,* 763 F.2d 705 (5th Cir.1985): "Even if [Berry] could prove at an evidentiary hearing, the personal ignorance that he has asserted, 'that [proof] would not be enough because [Berry] is chargeable with that awareness that a competent lawyer would have possessed.'" Id. at 710 (quoting *Jones v. Estelle,* 722 F.2d 159, 169 (5th Cir.1983)).

We were presented with virtually the identical issue the instant case presents in *Moore v. Blackburn,* 774 F.2d 97 (5th Cir. 1985). In *Moore,* the petitioner, in his first habeas petition, filed before *Caldwell* was announced, asserted that the Louisiana Supreme Court failed to adequately consider that the death penalty was imposed as a result of "arbitrary factors including ... the injection of appellate review." 774 F.2d 98. In resolving the claim in the first habeas petition, we held that: "Moreover, we do not believe that the prosecutor's brief reference to appellate review diminished the jury's sense of responsibility for its sentence." *Moore v. Maggio,* 740 F.2d 308, 320 (5th Cir.1984) (citing *Corn v. Zant,* 708 F.2d 549, 556–58 (11th Cir.1983); *McCorquodale v. Balkcom,* 705 F.2d 1553, 1556 (11th Cir.1983)).

After *Caldwell* was decided, Moore filed a second writ application and again asserted a claim predicated on the prosecutor's reference to appellate review. We rejected the claim for the following reasons:

> Raised here for the second time, the issue is barred by Rule 9(b) and the principles enunciated in *Sanders* [*v. U.S.,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148]. We ruled in the previous petition that "the prosecutor's brief reference to appellate review [did not] diminish [ ...] the jury's sense of responsibility for its sentence." 740 F.2d at 320. This pro-

1. Berry did not complain on appeal of the federal district court's denial of this claim. Because of the clear abuse of the writ, we do not consider the additional argument that Berry abandoned this claim when he did not argue on appeal that the district court erred in denying this claim. We also do not consider whether this represents an unjustified successive writ application in view of Berry's assertion of this claim in his first federal writ application filed in the district court.

nouncement is consistent with the rule set forth in *Caldwell*. Alternatively, even if we were to conclude that this issue is being raised in this petition for the first time, we must deny it as an abuse of the writ, Rule 9(b). In *Jones v. Estelle*, 722 F.2d 159 (5th Cir.1983) (en banc), we ruled that new claims in a successive petition must be dismissed if the failure to include them in a prior petition is an abuse of the writ. Claims must be included in the prior petition if a competent attorney should have been aware of the claims at the time of the prior petition. *Id.* at 169. That a competent attorney should have been aware of this claim is apparent from the Supreme Court's *Caldwell* opinion. See 105 S.Ct. at 2642.

*Moore,* 774 F.2d at 98.

▮ Even if Berry had an acceptable excuse for his delay in asserting this claim, the claim has no merit. We read *Caldwell* as standing for the proposition that a prosecutor's remark would be unconstitutional only if it diminished the jury's sense of responsibility for its sentence.

**2.** Defense counsel in *Caldwell* made the following remarks in closing argument during the sentencing stage of the trial:

[E]very life is precious and as long as there's life in the soul of a person, there is hope. There is hope, but life is one thing and death is final. So I implore you to think deeply about this matter. It is his life or death—the decision you're going to have to make, and I implore you to exercise your prerogative to spare the life of Bobby Caldwell.... I'm sure [the prosecutor is] going to say to you that Bobby Caldwell is not a merciful person, but I say unto you he is a human being. That he has a life that rests in your hands. You can give him life or you can give him death. *It's going to be your decision.* I don't know what else I can say to you but we live in a society where we are taught that an eye for an eye is not the solution.... *You are the judges and you will have to decide his fate.* It is an awesome responsibility, I know—an awesome responsibility.

*Caldwell,* 472 U.S. at 324, 105 S.Ct. at 2637 (emphasis added). The prosecution responded by stating:

ASSISTANT DISTRICT ATTORNEY: Ladies and gentlemen, I intend to be brief. I'm in complete disagreement with the approach the defense has taken. I don't think it's fair. I

In the instant case, the prosecutor stated in closing argument of the sentencing phase of Berry's trial that:

There is another provision of the act which says that the Supreme Court of Louisiana shall review every sentencing of death to determine if it is excessive. Every possible safeguard where a defendant for whom the jury is decided, who the D.A. has decided, who the judge has decided, who shall be sentenced to death shall go to the ultimate court of this state, and they will also determine is that sentence excessive, was the jury [erroneous] when they reached their verdict.

We agree with the district court that the prosecutor's brief remark did not deny Berry a fundamentally fair sentencing determination. First, the prosecution in the instant case made a brief, almost passing reference to appellate review. In contrast, the prosecutor in *Caldwell* made a direct attack on the defendant's case for mitigation. The prosecution's attack was in response to defense counsel's attempt to confront the jury with the gravity of its responsibility in determining whether it should impose the death sentence.[2]

think it's unfair. I think the lawyers know better. Now, they would have you believe that you're going to kill this man and they know— *they know that your decision is not the final decision.* My God, how unfair can you be? *Your job is reviewable.* They know it. Yet they ...

COUNSEL FOR DEFENDANT: Your Honor, I'm going to object to this statement. It's out of order.

ASSISTANT DISTRICT ATTORNEY: Your Honor, throughout their argument, they said this panel was going to kill this man. I think that's terribly unfair.

THE COURT: Alright, go on and make the full expression so the Jury will not be confused. *I think it proper that the jury realizes that it is reviewable automatically as the death penalty commands.* I think that information is now needed by the Jury so they will not be confused.

ASSISTANT DISTRICT ATTORNEY: Throughout their remarks, they attempted to give you the opposite, sparing the truth. They said "Thou shalt not kill." If that applies to him, it applies to you, insinuating that your decision is the final decision and that they're gonna take Bobby Caldwell out in the front of this Courthouse in moments and string him up and that is terribly, terribly unfair. For

Second, the prejudicial effect of the prosecutor's remarks in *Caldwell* was then magnified when the trial court put its stamp of approval on the prosecutor's statement. In the instant case no objection was made to the prosecutor's reference to appellate review, and the trial court had no occasion to comment on its propriety.

Finally, the trial court in the instant case, instead of reinforcing the improper argument, instructed the jury that they must decide whether Berry should receive the death sentence.

In summary, the brief remarks of the prosecutor in this case, like those in *Moore v. Blackburn*, 774 F.2d 97 (5th Cir.1985), did not diminish the jury's sense of responsibility for its sentence.

### III.

Berry argues next that the Louisiana capital sentencing scheme is unconstitutional because it allows a defendant to be sentenced to death based upon aggravating circumstances that may duplicate the essential elements of the underlying offense.[3] *Collins v. Lockhart*, 754 F.2d 258 (8th Cir.1985); *Woodard v. Sargent*, 806 F.2d 153 (8th Cir.1986). The Supreme Court has held that statutory aggravating circumstances must "genuinely narrow the class of persons eligible for the death penalty" in order to comply with the eighth amendment. *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). In *Collins*, the Eighth Circuit held that "[w]e see no escape from the conclusion that an aggravating circumstance which merely repeats an element of the underly-

ing crime cannot perform this narrowing function." *Collins*, 754 F.2d at 264.

■ Even though *Collins* was decided on January 31, 1985, Berry failed to raise the issue in his second petition for federal habeas corpus which he filed in July of 1986. Berry's counsel seeks to excuse this failure on grounds that *Collins* did not come to his attention until Justice White commented in March of 1987 that the Fifth and Eighth Circuits had conflicting rules on this question. See *Williams v. Ohio*, —— U.S. ——, 107 S.Ct. 1385, 1387, 94 L.Ed.2d 699 (1987) (Brennan, Marshall, White, J.J., dissenting). We agree with the district court that this "can hardly be used as counsel's excuse now for suddenly perceiving that there was some conflict among the circuits when counsel had the benefit of both decisions and the ability to compare them himself at least five months prior to the time he filed the second writ seeking only a resolution of and raising only the so-called *McCleskey* issue." We conclude therefore that Berry has failed to justify his failure to include this claim in his July 1986 habeas petition, and his assertion of that claim in the instant petition is an abuse of the writ. *Jones v. Estelle*, 722 F.2d 159 (5th Cir.1983); *Maggio v. Williams*, 464 U.S. 46, 55, 104 S.Ct. 311, 316, 78 L.Ed.2d 43 (1983) (Stevens, J. concurring). We agree that it is appropriate to bar the claim on this ground.

■ Even if Berry's excuse justifies his abuse of the writ, we find no merit to the claim. No circuit court has followed the Eighth Circuit decision in *Collins*, and we have expressly rejected it on several occa-

they know, as I know, and as Judge Baker has told you, that *the decision you render is automatically reviewable by the Supreme Court.* Automatically, and I think it's unfair and I don't mind telling them so.
*Id.* at 325–26, 105 S.Ct. at 2637–2638 (emphasis added).

3. Berry's first degree murder conviction was based on the following three elements:
   (1) The offender had "specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of . . . armed robbery"; and,
   (2) The offender had "specific intent to kill or to inflict great bodily harm upon a . . . peace

officer engaged in the performance of his lawful duties"; and,
   (3) The offender had "specific intent to kill or to inflict great bodily harm upon more than one person."
The jury based its sentence of death upon the following three aggravating circumstances:
   (1) "The offender was engaged in the perpetration or attempted perpetration of . . . armed robbery"; and,
   (2) "The victim was a . . . peace officer engaged in his lawful duties", and
   (3) "The offender knowingly created a risk of death or great bodily harm to more than one person."

sions. *Evans v. Thigpen,* 809 F.2d 239 (5th Cir.1987); *Wingo v. Blackburn,* 783 F.2d 1046 (5th Cir.1986); *Lowenfield v. Phelps,* 817 F.2d 285 (5th Cir.1987). This claim for relief is meritless.

### IV.

Berry's final contention is that we should grant him a stay of execution because of the Supreme Court's recent decision to stay the execution in *Welcome v. Blackburn,* —— U.S. ——, 107 S.Ct. 1985, 95 L.Ed.2d 825 (1987). We disagree. In the absence of a declaration by the Supreme Court that executions should be stayed in cases presenting this issue, we must follow our circuit's precedents and deny both a certificate of probable cause and a stay of execution. *Wicker v. McCotter,* 798 F.2d 155 (5th Cir.1986); *Evans v. Thigpen,* 809 F.2d 239 (5th Cir.1987). We therefore reject Berry's request for a stay of execution.

### V. CONCLUSION

For all of the reasons stated above, we conclude that Berry has not made a substantial showing of the denial of a federal right. *Barefoot v. Estelle,* 463 U.S. 880, 883, 103 S.Ct. 3383, 3389, 77 L.Ed.2d 1090 (1983). The application for a certificate of probable cause is DENIED; and the request for a stay of execution is DENIED.