John BROGDON, Petitioner-Appellant,

v.

Robert Hilton BUTLER, Warden, Louisiana State Penitentiary at Angola, Louisiana, Respondent-Appellee.

No. 87–3553.

United States Court of Appeals,
Fifth Circuit.

July 29, 1987.

Concurring opinion July 30, 1987.

Silas Wasserstrom, Washington, D.C., David B. Girard, Judith G. Menadue, New Orleans, La., for petitioner-appellant.

Gregory C. Champagne, Asst. Dist. Atty., Hahnville, La., William J. Guste, Atty. Gen., New Orleans, La., for respondent-appellee.

Before CLARK, Chief Judge, POLITZ and WILLIAMS, Circuit Judges.

PER CURIAM:

John E. Brogdon is under sentence of death and scheduled to be executed on July 30, 1987, by the State of Louisiana. He petitions for the right to appeal in forma pauperis, for a certificate of probable cause to appeal, and for a stay of execution. Brogdon has presented two previous petitions for habeas corpus relief in the state courts, and this is his second petition for relief under 28 U.S.C. § 2254. We grant the petition to appeal in forma pauperis. We deny the petition for a certificate of probable cause to appeal and for a stay of execution and dismiss the appeal.

*Facts*

John Brogdon was convicted of first degree murder on February 4, 1982. On that same day, the jury recommended that Brogdon receive the death sentence. The trial court then sentenced Brogdon to die. On appeal, the Louisiana Supreme Court affirmed the first degree murder conviction. Because of an erroneous charge given to the jury by the trial court in the sentencing instructions, Brogdon's death sentence was vacated, and the case was remanded for resentencing. *State v. Brogdon,* 426 So.2d 158 (La.1983).

On remand, a joint motion for a change of venue was granted, and the second sentencing hearing was held in Franklin, Louisiana on June 13–17, 1983. The second jury recommended that Brogdon receive the death sentence, and the court entered the sentence. Under Louisiana law, the jury's "recommendation" of a death sentence requires the court to assess that penalty. La.Code Crim.Proc.Ann. art. 905.8 (West 1984). On appeal, the Louisiana Supreme Court affirmed the death sentence. *State v. Brogdon,* 457 So.2d 616 (La.1984). Brogdon filed a petition for certiorari with the United States Supreme Court, and the petition was denied on May 13, 1985. *Brogdon v. Louisiana,* 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862, *reh'g denied,* 473 U.S. 921, 105 S.Ct. 3547, 87 L.Ed.2d 670 (1985).

Brogdon filed his first petition for habeas corpus relief in July, 1985, in Louisiana district court. That court and the Louisiana Supreme Court both denied relief. Brogdon then petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court, which also denied his petition. Brogdon appealed to this Court. We granted him a stay of execution on July 31, 1985, pending a consideration of his many claims. After a careful review of his claims and a critical intervening decision by the United States Supreme Court, we denied Brogdon a certificate of probable cause on May 30, 1986, and simultaneously vacated our stay of execution. 790 F.2d 1164 (5th Cir.1986). Brogdon's motion for a rehearing en banc was denied on June 27, 1986. 793 F.2d 1287 (5th Cir.1986) (en banc).

On September 9, 1986, Brogdon filed a petition for writ of certiorari with the United States Supreme Court. A stay of execution was granted on September 11, 1986, pending consideration of his petition for certiorari. On May 4, 1987, the stay was vacated when the Supreme Court denied the petition. *Brogdon v. Blackburn,* —— U.S. ——, 107 S.Ct. 1985, 95 L.Ed.2d 824 (1987).

On June 18, 1987, Louisiana issued a new warrant of execution setting July 30 as the execution date for Brogdon. On July 24, thirty-seven days after the warrant was issued and only six days before his scheduled execution date, Brogdon's counsel filed Brogdon's second petition for a writ of habeas corpus in the Louisiana state district court. The delay raises the spectre that counsel undertook to place such time constraints upon the courts that another stay of execution could be obtained, not on the merits of Brogdon's claims, but simply

because of the pressure of time. Nevertheless, the state district court denied relief on July 27, and the Louisiana Supreme Court denied relief on July 28. Brogdon then filed this petition for writ of habeas corpus and for a third stay of execution in the United States District Court, which denied the petition on July 28. Brogdon now appeals to this Court. We have spared no effort in reviewing the record, as we became familiar with the case and the record prior to the filing of this petition pursuant to our established procedure. Local Rule 8 and Fifth Circuit Internal Operating Procedure following that rule.

### Standards of Review

The issue before us is whether the petitioner has made a sufficient showing to justify the granting of a certificate of probable cause to appeal and a stay of execution so that the appeal can be considered on the merits.

The standard for granting a certificate of probable cause (CPC) under Fed.R.App.P. 22(b) is whether there has been a substantial showing of a denial of a federal right. *Stewart v. Beto*, 454 F.2d 268, 279 n. 2 (5th Cir.1971).

The standard for reviewing an application for a stay of execution has been set out by this court many times:

> In general, a court, in deciding whether to issue a stay, must consider: (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.

*Celestine v. Butler*, slip opinion 5609, 823 F.2d 74 (5th Cir.1987), *citing O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir.1984); *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir.1982), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir.1982).

In a capital case, "while the movant need not always show the probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities (i.e. the other three factors) weighs heavily in favor of granting the stay." *O'Bryan v. McKaskle*, 729 F.2d at 993, *citing Ruiz v. Estelle*, 666 F.2d at 856.

In deciding whether the requirements have been met for the granting of a CPC and a stay, the merits of the habeas corpus claims obviously must be considered to the extent necessary to determine whether they are substantial.

### The Claims

The United States District Court held a hearing and concluded that the present application constituted an abuse of the writ, Rule 9(b), 28 U.S.C. foll. § 2254. Nevertheless, the district court considered on the merits and rejected all of petitioner's claims that had not been earlier adjudicated. We agree with the district court, but alternatively consider and reject all seven of petitioner's claims. We summarize them briefly, and consider them in turn:

1. Petitioner's death sentence violates the Constitution because one of the aggravating circumstances fully overlaps with a circumstance the State proved to establish his guilt of first degree murder.

2. Execution of mentally retarded petitioner would constitute cruel and unusual punishment.

3. The admission of photographs at the sentencing hearing violated petitioner's right to a fair sentencing hearing.

4. The denial of petitioner's right to an evidentiary hearing on the issue of the State's suppression of favorable evidence violated due process.

5. The trial court's ruling that testimony concerning the sentence received by petitioner's co-indictee was not relevant mitigating evidence violated the Eighth Amendment.

6. Capital punishment is excessive.

7. Electrocution is a cruel and unusual means of punishment.

### First Claim

▮ Petitioner's first claim raises the same issue raised in *Lowenfield v. Phelps*, 817 F.2d 285 (5th Cir.), *cert. granted,* —— U.S. ——, 107 S.Ct. 3227, 97 L.Ed.2d 734 (1987). That issue is whether a statutory aggravating circumstance can be used to justify the sentence of death if that same circumstance is an element of the underlying crime for which the death sentence is meted out. In this case, the aggravating circumstance is aggravated rape.

We need not address the *Lowenfield* issue in this case, however, because the jury found two aggravating circumstances at the sentencing phase of this case. One was aggravated rape; the other was that "the offense was committed in an especially heinous, atrocious, or cruel manner." *State v. Brogdon*, 457 So.2d at 622. Even if the former circumstance is found invalid, the latter is sufficient to support imposition of the death penalty. The Supreme Court has specifically held that when, by statute, only one aggravating factor is required to support the capital penalty and two or more are found, the death sentence is not made invalid by the invalidity of only one of the aggravating factors. *Zant v. Stephens*, 462 U.S. 862, 885–89, 103 S.Ct. 2733, 2747–49, 77 L.Ed.2d 235 (1983). *See also Williams v. Maggio*, 679 F.2d 381 (5th Cir. 1982) (en banc), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983). (Judge Politz and Judge Williams continue to adhere to the reasoning of the dissenting opinion authored by Judge Randall in *Maggio*, but acknowledge that this panel is bound by both *Zant* and the *Maggio* majority.)

The grant of the petition for certiorari in *Lowenfield* can be of no aid to petitioner because a valid aggravating circumstance would still stand even if the application of the aggravated rape circumstance were found invalid. *Celestine v. Butler*, —— U.S. ——, 108 S.Ct. 6, 96 L.Ed.2d —— (1987). We note further that the Supreme Court has not granted certiorari in every case raising the *Lowenfield* issue. *See Watson v. Butler*, —— U.S. ——, 108 S.Ct. 6, 96 L.Ed.2d —— (1987). Under the current law the use of aggravated rape as an element of the substantive crime and also as an aggravating factor at the sentencing phase is proper and does not support the grant of a CPC or a stay of execution.

### Second Claim

▮ Petitioner's second claim is that the execution of a mentally retarded person constitutes cruel and unusual punishment, even though the claimed mental retardation was considered and rejected in the guilt phase of the trial. Petitioner cites no authority for his contention, and we can find none. Mental retardation does not constitute insanity or incapacity to know the difference between right and wrong. It is only the latter disability, not the former, that serves as a defense to conviction and also to punishment. *See DeAngelas v. Plaut*, 503 F.Supp. 775, 782 (D.C.Conn. 1980).

▮ Petitioner raised the defense of diminished mental capacity both at trial and at the sentencing phase as a mitigating circumstance. *State v. Brogdon*, 457 So.2d at 627–28. The jury rejected the claim as a defense in the guilt phase, and the claim was presented to the jury for its consideration in the sentencing phase. In spite of the claim, the jury recommended the death sentence. But petitioner now asserts that he cannot be executed because of his low mental capacity.

Petitioner's mental health claim is based on his low I.Q., which is presumptively the same now as it was at trial, as well as at the time the crime was committed. Because petitioner does not now claim that the state court erred in its determination that his mental capacity was sufficient at the time of trial to hold him responsible for his actions in a capital case, we must reject petitioner's claim that his unchanged mental capacity does not permit execution. If he is mentally competent to be held guilty of a capital crime, and petitioner does not challenge this, he is competent to be punished for that crime.

### Third Claim

■ Petitioner's third claim is that the admission at the sentencing hearing of graphic photographs of the body of the victim violated his right to a fair sentencing hearing under the Eighth Amendment. Petitioner objected to the introduction of photographs both at trial and at the sentencing hearing. The Louisiana Supreme Court held that the admission of photographs at the guilt phase was not error, because the photographs were

> relevant to show the location of the body, the manner of death and attempted disposal of the body, and the specific intent of the defendant to kill the victim. The pictures were relatively inoffensive, and it is abundantly clear that their probative value outweighed any prejudice to the defendant.

*State v. Brogdon*, 426 So.2d at 169. Petitioner does not take issue with this determination by the state court.

If such photographs were concededly relevant and properly admitted at the guilt phase of petitioner's trial, then we cannot find that those and other similar photographs were improperly admitted at the sentencing phase, unless they were significantly more inflammatory than those introduced at the guilt phase. Such a comparison is not advanced by petitioner. The Louisiana statute regulating sentencing hearings in capital cases provides as follows:

> The sentencing hearing shall focus on the circumstances of the offense....
> The jury may consider any evidence offered at the trial on the issue of guilt.

La.Code Crim.Proc.Ann. art. 905.2 (West 1984). The constitutionality of these specific provisions has been tested and affirmed. *State v. Sonnier*, 379 So.2d 1336, 1356–57 (La.1979), *appeal after remand*, 402 So.2d 650 (La.1981), *cert. denied*, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412, *reh'g denied*, 463 U.S. 1249, 104 S.Ct. 36, 77 L.Ed.2d 1455 (1983).

The photographs at issue were relevant to show the circumstances of the offense, and the aggravation of heinousness. As the United States District Court noted, after a hearing and viewing the photographs, "[t]here is no antiseptic way to present such evidence." *Brogdon v. Butler*, No. 87–3495 (E.D.La. July 28, 1987). In an attempt to avoid the introduction of the photographs, petitioner offered to stipulate the heinousness of the crime. But the condition of the body of the victim was highly relevant to the asserted aggravation. The issue of the asserted undue inflammatory nature of the photographs presented a matter within the discretion of the state district court. *See State v. Watson*, 449 So.2d 1321, 1326 (La.1984) ("An offered stipulation bears upon this balancing test, but the decision is primarily one for the trial court."), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). The United States District Court properly entertained "serious doubts of whether it is the function of a federal court to review a finding by a Louisiana trial court, affirmed by the Louisiana Supreme Court, that the probative value of these photographs outweighs the possible inflammatory effect." *Brogdon v. Butler, supra.*

Petitioner claims that this exact issue is now before the Supreme Court in *Thompson v. Oklahoma*, 724 P.2d 780 (Okla.Crim. App.1986), *cert. granted*, —— U.S. ——, 107 S.Ct. 1284, 94 L.Ed.2d 143 (1987). *Thompson* raises the issue of whether the admission of concededly inflammatory evidence in a capital case against a sixteen-year-old can be considered harmless error merely because of strong evidence of guilt. This is not the situation with which we are presented because the evidence at issue in *Thompson* was concededly admitted in error. In this case, petitioner has not carried the burden of showing the photographs were admitted in error. Finally, we stress that petitioner had the opportunity to raise this issue in his earlier petition and did not do so. We must reject his claim. The admission of the photographs at the sentencing hearing will not support the grant of a CPC or a stay of execution.

### Fourth, Sixth, and Seventh Claims

Petitioner alleges as his fourth, sixth, and seventh claims that (4) because the

State either failed to test the blood sample drawn from him for its alcohol content, or failed to share the results of that test with the defense, the State violated his rights as defined in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (6) capital punishment is excessive; and (7) electrocution is a cruel and unusual means of punishment. These claims were all presented in petitioner's first petition for habeas corpus relief. They were fully considered and denied by both the district court and this Court. *See* 790 F.2d at 1167–70. Petitioner's presentation of these claims has added nothing to his prior adjudicated claims. We need not reconsider the earlier final decision.

*Fifth Claim*

■ Petitioner also raises for the second time in his habeas corpus petition the claim that the trial court violated the Eighth Amendment by ruling that testimony concerning the life sentence received by petitioner's co-indictee was not relevant mitigating evidence. Again, we reaffirm the rejection of this ground for relief for the reasons set out in our consideration of petitioner's previous petition. We comment separately only to note *Hitchcock v. Dugger*, —— U.S. ——, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), cited by petitioner for the proposition that a sentencing jury must not be instructed to limit its consideration of nonstatutory mitigation circumstances. *Hitchcock* is not significantly relevant to this case. Like *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), on which it is based, *Hitchcock* is concerned only with the opportunity for the jury to consider relevant mitigating evidence. Evidence of the sentence received by petitioner's partner in crime is not relevant to the consideration of petitioner's character, record, or to the offense he committed. *Hitchcock* does not change the applicable law, and this claim does not support the grant of a CPC or a stay of execution.

*Conclusion*

This case was brought to us in the late evening of July 28, only 29 hours before petitioner was scheduled to be executed. We have exhaustively reviewed the issues despite the short time available to us, as we have been kept fully informed of petitioner's claims from the time of his habeas corpus filing in the Louisiana district court. We find that petitioner has not made a substantial showing of a valid claim for habeas corpus relief. We therefore GRANT the right to appeal in forma pauperis, DENY the certificate of probable cause to appeal, and DENY the stay of execution.

RIGHT TO APPEAL IN FORMA PAUPERIS GRANTED.

CERTIFICATE OF PROBABLE CAUSE TO APPEAL DENIED.

STAY OF EXECUTION DENIED.

CLARK, Chief Judge, with whom POLITZ and JERRE S. WILLIAMS, Circuit Judges, join concurring:

I concur without reservation or exception in the opinion of the court. I write separately to express a concern that the continued normal application of ordinary legal procedures in this type of case produces a public perception of injustice which carries the portent to undermine the foundation of our system of law.

I.

The legislature of the State of Louisiana has ordained that a crime of the type committed by John Brogdon may be punished by executing the person duly proven to have committed it. The Supreme Courts of both Louisiana and the United States have decreed that Louisiana's death penalty statute is a constitutionally permissible enactment. This inferior federal court has no control over these fundamental premises.

II.

In a legally constituted forum, before a properly selected jury, the State of Louisiana proved beyond a reasonable doubt that on October 7, 1981, John Brogdon and an-

other tortured the life out of eleven-year-old Barbara Jo Brown. After hearing the proof, which included John Brogdon's voluntary confession of guilt, a jury decided that Brogdon was guilty. Another jury duly decided that he should be executed.

This court's per curiam opinion recites an ensuing litany of direct and collateral review covering over five years. This is not unusual. It has become common in every capital case to see the process include conviction, sentence, appeal, execution date set, state collateral review, federal collateral review, stay, stay dissolved, successive state collateral review and successive federal collateral review. Indeed, proceedings have stretched even longer in many such cases.

### III.

This court would be blind if it did not see that counsel for defendant deliberately withheld their challenges to Brogdon's sentence until the very last possible time before each of his three execution dates. It is the clear perception of this judge that Brogdon's counsel were bent on opposing his execution by confusion in addition to testing the points of law they raised. The delay this counsel action introduces into the system is only part of the problem.

### IV.

The courts themselves have been slow to react to their new responsibility in today's death penalty cases. During the period when the Supreme Court of the United States interdicted capital punishment and sorted out the constitutional propriety of statutes and trial procedures, the population of death row in many states multiplied. That dam has broken, and the rush of cases is upon the courts. Justice requires that in each instance capital punishment be imposed with maximum assurance of scrupulous legality. But, justice equally demands an assurance that such punishment be imposed when the minds of men still retain memory of the crime committed. Otherwise, capital punishment becomes a sort of second, albeit legal, crime.

### V.

As the per curiam notes, this court has already moved to develop procedures to advance the time it gets adequate information on which to base its decisions in these cases. More must be done. Courts must develop ways to effectively complete direct and collateral review in far less time than now required. Expediting the review process doubtless will delay civil proceedings. That price must be paid. Counsel delays must be eliminated through sanctions, if not through persuasion. More counsel must be found who will shoulder the increased caseload. I write to plead for change to come and come quickly before respect for the law erodes beyond repair.