Walter BELL, Jr., Petitioner–Appellant,

v.

James A. LYNAUGH, Director, Texas Department of Corrections, Respondent–Appellee.

No. 88–2966.

United States Court of Appeals, Fifth Circuit.

Oct. 13, 1988.

---

Edward M. Chikofsky, New York City, Eden Harrington, Capital Punishment Clinic, Univ. of Texas School of Law, Austin, Tex., for petitioner-appellant.

Jim Mattox, Atty. Gen., Robert Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Less than one week before his scheduled execution date of October 14, 1988, petitioner Walter Bell has commenced his third attempt to secure a writ of habeas corpus in the state courts (the second such petition in our Court). The federal district court denied relief principally for abuse of the writ. Further, it refused to issue a certificate of probable cause to appeal, which may only be granted if a petitioner makes a "substantial showing of the denial of a federal right." *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed. 2d 1090 (1983). For the reasons set forth below, we grant Bell leave to proceed in forma pauperis, and we deny the motions for certificate of probable cause and stay of execution.

## I. FACTS AND PROCEDURAL BACKGROUND

Petitioner worked at an appliance store owned by Ferd and Irene Chisum for seven weeks in mid-1974. He was fired. Approximately two weeks later, the Chisums were found murdered in the bathtub of their Port Arthur, Texas home. Irene Chisum showed evidence of sexual assault. Bell was arrested the next morning and shortly thereafter confessed to killing the Chisums after officials confronted him with incriminating physical evidence lawfully found at his home. The Texas Court of Criminal Appeals, affirming his conviction, succinctly describes the facts of the case as follows:

The evidence at the guilt stage demonstrates that appellant's crime was planned in advance, with violence anticipated beforehand; it also shows that the violence escalated in stages, with several opportunities for appellant to desist. Appellant carried with him to the Chisums' house an "equipment kit," with a sharpened knife, handcuffs, and an electrical cord with the ends cut off. He gained entry to their home under a pretext, and discussed with Mr. Chisum the possibility of getting into mechanic's school. He then pulled a knife on Chisum, put the cuffs on him, bound his feet and put him in a closet. Appellant next found Mrs. Chisum and attempted to gag her and tie her up, but when Mr. Chisum escaped from the closet, appellant stabbed him in the chest and retied him. After that, he

untied Mrs. Chisum's legs, made her remove her brassiere and panties, and raped her. He then forced her to write out some checks [to the fictitious payee "Bobby Williams"], hit her in the jaw, and attempted to choke her to death with a towel. He dragged her into the bathroom, where she struggled, but he succeeded in killing her. Appellant then returned to Mr. Chisum, choked him, dragged him to the bathtub and stabbed him again in the abdomen. This sequence of events indicates a propensity, perhaps even an appetite, for violence.

The next day appellant spent the spoils of his crime on clothing and beer, attempted to cash the checks, played pool, and generally enjoyed himself. There was no hint of remorse or contrition prior to his arrest. There was also no evidence that he was provoked by the victims, or was acting under the domination of anyone else.

*Bell v. State,* 724 S.W.2d 780, 804 (Tex. Crim.App.1986), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).[1] Bell's second written confession, in which he admitted honing a butter knife into a weapon and preparing carefully for the murder before he went to the Chisums' house, was admitted during his trial in 1982 and is recited in *Bell v. State,* 582 S.W.2d at 803–04 n. 2.

After exhausting state remedies, appellant petitioned for a federal writ of habeas corpus. The federal district court held an evidentiary hearing on May 11, 1987, following which it denied relief in a comprehensive and well-reasoned opinion. This Court affirmed the denial of relief in its opinion published September 23, 1987. *Bell v. Lynaugh,* 828 F.2d 1085 (5th Cir. 1987), cert. denied, —— U.S. ——, 108 S.Ct. 310, 98 L.Ed.2d 268 (1987). That opinion

addressed at least eight principal grounds for relief urged by Bell, foremost of which was his contention that his defense counsel in the 1982 trial was constitutionally deficient for failing to raise or explore psychiatric evidence of his mental retardation as a mitigating factor during the penalty phase of the trial. Our earlier opinion focused on the fact that, during his 1974 trial, Bell had challenged his competency, guilt and death sentence on the grounds of mild mental retardation, expert testimony was introduced, and the jury had sentenced him to death nevertheless. Prior to the 1982 trial, his attorney, having reviewed the 1974 professional testimony thoroughly, made a calculated, strategic decision not to defend based on professional evidence of Bell's allegedly deficient mental state. We concluded that this strategic decision was soundly based and did not fall below that objective standard of reasonableness required to sustain a constitutional challenge to the adequacy of counsel. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674, 694, 698 (1984).

Bell's execution was then set for October 14, 1987. On October 8, 1987, Bell filed his second application for habeas corpus in the state court, raising three contentions: (1) that the Texas Death Penalty Statute denies him due process because Question 1 of Article 37.071(b)(1) merely duplicates the elements of the underlying crime; (2) that the state court failed to specifically instruct the jury on the proper impact of mitigating factors in their deliberations; and (3) that the execution of the mentally retarded is cruel and unusual punishment. That same day, the state court issued an opinion denying consideration of this petition as an abuse of the writ.[2] The trial court concluded:

---

**1.** Bell was originally tried and convicted of the capital murder of Irene Chisum in December 1974. That conviction was affirmed on appeal, *Bell v. State,* 582 S.W.2d 800 (Tex.Crim.App. 1979), cert. denied, 453 U.S. 913, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981), rehearing denied, 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1022 (1981), but it was set aside during habeas review in 1984.

**2.** The state court found that Bell made no showing why these issues were not previously presented nor why he waited until the eve of execution to assert new legal contentions. The state court found that Bell had ample time to raise all of these issues during trial and in numerous post-conviction proceedings, but wholly failed to do so. The court found petitioner's first contention to be contrary to the nature of the objection he made to the charge

None of the present issues were contained in that [prior] application nor is there any showing why such issues were not timely presented. Such abuse should not be rewarded with the relief sought.

On October 12, 1987, the Texas Court of Criminal Appeals granted a stay of execution, issuing no reasons for its decision. Perhaps not coincidentally, that was also the date on which the United States Supreme Court granted certiorari in *Franklin v. Lynaugh*, ── U.S. ──, 108 S.Ct. 221, 98 L.Ed.2d 180, to consider whether the Texas trial court's refusal to give certain jury instructions on mitigating circumstances violated a petitioner's eighth amendment right to present mitigating evidence at his capital sentencing trial.

Ultimately, the Texas Court of Criminal Appeals denied relief in an order entered June 27, 1988, which stated that, "The findings and conclusions entered by the trial court are supported by the record." The *Franklin* opinion, which rejected Franklin's contentions, had been issued by the Supreme Court on June 22. ── U.S. ──, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). On June 30, however, the Court granted certiorari in *Penry v. Lynaugh*, 832 F.2d 915 (5th Cir.1987), agreeing to consider whether the execution of a mentally retarded person is unconstitutional and whether failure to instruct the jury as to the impact of mental retardation on its consideration of mitigating circumstances violated the eighth amendment rule of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). *Penry*, ── U.S. ──, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988).

The state court re-set Bell's execution date several times during the following months, at request of various counsel, but finally settled on the date of October 14, 1988. Counsel for petitioner, Mr. Chikofsky, in connection with obtaining the final

extension of time, represented in writing, both to the state court and the Texas Attorney General, that he would file any state court petition no less than 14 days before an execution date. He did not do so. His "petition for rehearing," addressed to the Texas Court of Criminal Appeals, was filed Friday, October 7,[3] and was dismissed.

The federal district court, again performing admirably in a short period of time, found that petitioner failed to comply with local rules of the Eastern District of Texas upon filing a successive petition for habeas corpus. For this reason, and because petitioner did not explain or excuse the successive filing and because the court found petitioner "has been used and abused by the filing of meritless appeals on behalf of this Petitioner," the court refused relief. The district court also found Bell's claims procedurally barred and, alternatively, lacking in merit.

Petitioner now raises only two issues that he contends should prevent the infliction of capital punishment. These are whether the Texas statute affords sufficient consideration of mental retardation as a mitigating circumstance, and whether execution of the mentally retarded is unconstitutionally cruel and unusual punishment.

## II.  ABUSE OF THE WRIT

■    The State of Texas moves to dismiss this petition for abuse of habeas corpus. Rule 9(b) of the Rules Governing Section 2254 Cases provides:

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits, or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert

---

during his trial. Neither the second nor third issues raised in this habeas petition were, however, presented to the court during trial.

**3.**  Mr. Chikofsky, a resident of New York, has been assisted by counsel from Texas ever since he filed Bell's first state habeas petition. Thus, there appears to be no excuse for his improper filing of the "Motion to Reconsider," really a

third habeas petition, in the state criminal appellate court. Tex.Code Crim.Proc.Ann. art. 11.-07; Tex.R.App.Proc. 213(b). Nor would Mr. Chikofsky's residence excuse counsel's misfiling this second federal habeas petition in the wrong division of the Eastern District of Texas (Tyler), 400 miles from the division (Beaumont) in which they had previously filed.

those grounds in a prior petition constituted an abuse of the writ.[4]

Our court, elaborating on this rule, holds that the proper standard for abuse of the writ is not whether a petitioner intentionally bypassed an issue at the time of the earlier petition, but "whether he withheld it without legal excuse when he filed his earlier petition." *Hamilton v. McCotter,* 772 F.2d 171, 176 (5th Cir.1985), quoting *Jones v. Estelle,* 722 F.2d 159, 163 (5th Cir.1983) (en banc), cert denied sub. nom. *Jones v. McKaskle,* 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984). Legal excuse may exist if, after the previous proceeding, a change in the law makes a claim possible, or the petitioner actually or constructively learns of facts supporting the new claim. *Hamilton,* 772 F.2d at 176. The petitioner is charged with his competent counsel's knowledge of potential claims for relief. *Moore v. Butler,* 819 F.2d 517, 519 (5th Cir.1987).

On October 8, 1987, petitioner raised substantially the same issues as he raises here in his second petition for habeas corpus in the state courts. That filing also was made seven days prior to the scheduled date of execution. In an opinion later affirmed by the Texas Court of Criminal Appeals, the state district court ruled that "Petitioner has clearly abused the sacred writ designed to protect [against] unlawful state action by waiting until the 12th hour to raise grounds that could have been easily propounded long ago." That court noted that:

> Petitioner makes absolutely no showing of why these issues were not previously presented nor why he waits until the very eve of his execution to make new legal contentions. Petitioner had ample time to raise all of the issues presently at hand during trial and in numerous post-conviction proceedings, but wholly failed to do so.

The same factors that led the trial court to find an abuse of the writ are present in this successive petition filed almost exactly one year later.

First, neither the factual nor legal basis for Bell's issues was unknown or unknowable at the time his first habeas petition was filed in March, 1987. The question of Bell's mental acuity had been fully litigated in the 1974 trial, and in the 1982 trial, counsel had raised Bell's "slowness" as a matter of lay testimony to cast doubt on both the guilt and punishment issues.

The legal basis for mental retardation challenges to the death penalty was likewise readily ascertainable. Two months prior to Bell's first habeas petition, Justice O'Connor, concurring in *California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 841–42, 93 L.Ed.2d 934 (1987), observed a "tension" between the lines of Supreme Court death penalty jurisprudence represented by *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), on one hand, and *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), on the other. The prior cases required specific and detailed capital sentencing guidelines for the jury, while the latter urges jury flexibility in considering any relevant mitigating circumstance. Justices White and Rehnquist had much earlier acknowledged the same possible tension. *Lockett v. Ohio,* 438 U.S. 586, 623–24 and 630, 98 S.Ct. 2954, 2982 and 2974, 57 L.Ed.2d 973 (1978). Whether the jury could adequately consider mental retardation as a mitigating circumstance under the Texas death penalty scheme upheld in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), was subject to question at least by the time of the first habeas petition. Bell's pleadings in this Court characterize the state's failure to instruct on mental retardation as a mitigating factor, following *Lockett* and *Eddings,* as "clearly unconstitutional."

---

**4.** In *Kuhlman v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), the Supreme Court clarified the standard under Rule 9(b) for finding an abuse of the writ. That standard also applies in capital cases. *Johnson v. Lynaugh,*

821 F.2d 224 (5th Cir.), stay denied, —— U.S. ——, 107 S.Ct. 3248, 97 L.Ed.2d 752 (1987); *Berry v. Phelps,* 819 F.2d 511 (5th Cir.), stay denied, —— U.S. ——, 107 S.Ct. 3179, 96 L.Ed.2d 668 (1987).

The issue of serious mental retardation as a bar to infliction of capital punishment was also an arguable proposition no later than the decision in *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), which rejected capital punishment for insane persons who are unable to comprehend what is happening to them. Penry, whose case will shortly be heard in the Supreme Court, had properly preserved these legal issues in a state criminal trial held in 1980. *Penry v. State,* 691 S.W.2d 636 (Tex.Crim.App.1985).

On balance, the legal effect of Bell's alleged mental retardation on his capital sentence was ascertainable to his habeas counsel before the first petition was filed. Compare *Selvage v. Lynaugh,* 842 F.2d 89, 93–95 (5th Cir.1988). There is, however, another reason for holding that Bell has abused the writ, and that involves the timing of his second and third forays for relief. His second habeas petition was filed in state court one week before the 1987 execution date and several months after this court issued *Penry v. Lynaugh,* questioning the Texas death penalty scheme as regards mental retardation. This year, although the Supreme Court granted certiorari in *Penry* on June 30, counsel again waited until over three months later, one week prior to the execution date, to assert his challenge. Moreover, he reneged on an agreement with the state, in writing, that, to obtain a delay of execution from September to October, 1988, he would file any habeas petition no earlier than two weeks before the October date.

This Court has recently reiterated its frustration with a petition that is filed only one week prior to the scheduled execution, *Bridge v. Lynaugh,* 856 F.2d 712, 716 (5th Cir.1988) (ellipsis in original):

> In a panel concurring opinion in *Brogdon v. Butler,* 824 F.2d 338, 344 (5th Cir. 1987), we said "this Court would be blind if it did not see that counsel for defendant deliberately withheld their challenges ... until the very last possible (date) ..." The time schedule in the case be-

fore us raises at least the suspicion of delay in filing in the hope that the Court will again stay the execution to enable full consideration on the merits. By waiting until the last possible minute to make the appeal, counsel does not adequately discharge his responsibility in this Court.

The Supreme Court has expressly held that waiting until the last minute to seek a stay of execution with no explanation as to why the claims were not raised earlier is an abuse of the writ. *Woodard v. Hutchins,* 464 U.S. 377, 377–78, 104 S.Ct. 752, 752, 78 L.Ed.2d 541 (1984) (Powell, J., joined by Burger, C.J., Blackmun, Rehnquist and O'Connor, J.J. concurring in the per curiam order to vacate the stay). The Supreme Court's instruction in such cases is clear:

> A pattern seems to be developing in capital cases of multiple review in which claims that could have been presented years ago are brought forward—often in a piecemeal fashion—only after the execution date is set or becomes imminent. *Federal courts should not continue to tolerate—even in capital cases—this type of abuse of the writ of habeas corpus.*

464 U.S. at 380, 104 S.Ct. at 753–54 (emphasis added). See also, *Antone v. Dugger,* 465 U.S. 200, 104 S.Ct. 962, 79 L.Ed.2d 147 (1984) (successive appeals of the same issue constitute an abuse of the writ). The facts of this case raise at least a serious issue whether Bell has abused the writ in federal court.

### III. PROCEDURAL BAR

Acknowledging the current lack of clarity in our precedent,[5] we pretermit discussion of this issue because we are unable to grant relief even if we consider Bell's claims on the merits.

### IV. MENTAL RETARDATION AS A BASIS FOR CONSTITUTIONAL RELIEF

■ If the formidable hurdles posed by the abuse of writ and procedural bar doc-

---

5. Compare *Bridge v. Lynaugh,* 856 F.2d 712 (5th Cir. 1988) rehearing pending, with *Selvage v. Lynaugh,* 842 F.2d 89, 93–95 (5th Cir.1988); *Cook v. Lynaugh,* 821 F.2d 1072, 1076–77 (5th Cir.1987), *Thompson v. Lynaugh,* 821 F.2d 1080 (5th Cir.), cert. denied, —— U.S. ——, 108 S.Ct. 5, 97 L.Ed.2d 794 (1987).

trines are overcome, or are overlooked in the interest of last-minute justice, we are still unable to grant Bell any relief. Supreme Court case law does not now provide that a defendant has the constitutional right to a jury instruction that mental retardation must be considered as a specific mitigating circumstance against a death penalty, nor has the Court proscribed the death penalty for victims of mental retardation. This Court has held squarely against both contentions. See *Penry v. Lynaugh*, supra; *Brogdon v. Butler*, 824 F.2d 338, 341, (5th Cir.), cert. denied, — U.S. ——, 108 S.Ct. 13, 97 L.Ed.2d 802 (1987); *Granviel v. Estelle*, 655 F.2d 673 (5th Cir.1981) cert. denied, *Granviel v. Texas*, — U.S. ——, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987). We are bound by our Circuit's precedent.

■ Moreover, contrary to Bell's assertions, we may not grant stays of execution simply because the Supreme Court has granted certiorari on an issue pertaining to the death penalty which is raised by subsequent petitioners. *Streetman v. Lynaugh*, 835 F.2d 1519, 1520 (5th Cir.1988); *Wicker v. McCotter*, 798 F.2d 155, 157–58, (5th Cir.1986); *Berry v. Phelps*, 795 F.2d 504, 507 (5th Cir.1986) cert. denied, — U.S. ——, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987).

■ We would additionally observe that although Bell's arguments have some abstract appeal in the present legal uncertainty as to *Penry*, those arguments must be reviewed in light of the facts of the case. Bell's present petition candidly acknowledges that his mental retardation "may or may not have had anything to do with his future dangerousness, or in fact it may have meant that he was admittedly likely to be dangerous in the future." Bell goes on to suggest that a jury should have been required to consider Bell's mental retardation for whatever mitigating value it might have had. We suggest Bell's possibly diminished mental state could not have been perceived as mitigating.

First, Bell has been tried and sentenced to capital murder twice, with (1974) and without (1982) expert psychiatric testimony of mental retardation.[6] In 1982, with the benefit of 20/20 hindsight, his trial counsel concluded, and we agreed, that clinical borderline evidence of retardation was, at best, a two-edged sword for his client, and he decided against seeking further testing or introduction of such evidence.

We join others in observing that testimony of mental deficiencies, to be effective for the defense, must walk a fine line between describing the defendant's powerlessness to control his past actions and rejecting the prediction that he would commit violent crime in the future. *Penry v. Lynaugh*, 832 F.2d 915, 925–26 (5th Cir. 1987); *Granviel v. Estelle*, 655 F.2d 673, 675–77 (5th Cir.1981) compare *Burger v. Kemp*, — U.S. ——, 107 S.Ct. 3114, 3123 and n. 7, 97 L.Ed.2d 638 (1987). In this case, the clinical evidence of mental retardation presented in Bell's first trial almost surely would not have had a mitigating effect on a jury's deliberations. Both a psychologist who testified in Bell's defense and the psychiatric witness for the state testified that Bell had the mental capacity not to engage in wrongful conduct if he so desired. The state's psychiatrist found Bell capable of distinguishing between right and wrong and of determining the consequences of his acts, and he also found that a person of Bell's intelligence level tends to have a decreased impulse control. The experts concluded that Bell's I.Q. fell between 67 and 70, possibly increasing with age, and that his condition represented borderline retardation.

That evidence of borderline intelligence and its consequences did not, however, reconcile with the facts of this case: Bell had obviously made a thoughtful, strategic choice to take money from the Chisums by violent means. His confession indicates that he called a friend and concocted the scheme of robbing and murdering the Chisums so that they would have money to attend a rock concert in Houston. He

---

**6.** Bell's petition repeatedly and misleadingly stresses his alleged 54 I.Q. This was suggested in his mother's lay testimony during the 1982 trial and is inconsistent with earlier expert testimony recited in the body of this opinion.

honed a butter knife into a weapon, he removed the male and female ends of an electrical extension cord to facilitate its use as a binding or strangulation device, and he packed handcuffs to further disable his victims. He instructed Irene Chisum to write a check payable to the fictitious "Bobby Williams." As the Texas Court of Criminal Appeals observed, Bell could have reconsidered or desisted from the binding, robbery, knifing, gagging, raping, strangulation and murder of his victims at several junctures, but he did not do so.

Bell's 1982 trial counsel was well aware of the incongruity between Bell's actions and the clinical mental retardation defense when he chose to appeal to the jurors' sympathy based on lay rather than expert testimony of his client's "slowness." Bell may be "slow," but his course of conduct was determined, rational, and showed foresight to accomplish a nefarious goal. Bell undermined his credibility further by testifying during the penalty phase, against counsel's suggestion and overwhelming contrary circumstantial evidence, that he did not commit the murders. Thus, although we can envision a situation in which some "slow" person is wickedly taunted, bribed or encouraged to do or participate in a serious crime, this is not such a case. By the same token, we are unable to conclude that, even if Bell were granted a new trial at which a jury would be required by the Constitution to receive an instruction on mental retardation as a mitigating circumstance, that the facts of this case would predispose them to clemency.

Bell's request for a jury instruction that his mental retardation was a mitigating circumstance fails, not only because the jury could not have believed that retardation somehow caused or contributed to this premeditated crime, but also because Bell could and did urge its mitigating effect repeatedly in his 1982 trial. Testimony at trial indicated that Bell attended special education classes through high school, that

he was "slow" and easily led, and that he had no criminal record and was a nonviolent person. Such evidence was relevant to both special issues in the Texas capital punishment scheme, i.e. whether he acted "deliberately" in order to commit murder as well as whether he would be dangerous in the future.

In *Franklin*, a plurality of the Supreme Court held that the Texas scheme affords a defendant the opportunity to offer any mitigating evidence so that a jury may exercise informed discretion in answering the two capital punishment issues. *Franklin*, 108 S.Ct. at 2331–32. Justices O'Connor and Blackmun, concurring, left open the possibility that mitigating evidence not relevant to the special issues or beyond their scope might violate the eighth amendment. 108 S.Ct. at 2332–35. The evidence offered in this case by Bell does not fall within the concerns of the concurrence, because it is relevant to the Texas special issues and was presented as such. See, e.g., *Bridge v. Lynaugh*, 856 F.2d 712, 715 (evidence that defendant was "easily led" is relevant to second Texas death penalty issue). We therefore disagree that the Texas law or jury charge disabled Bell from presenting evidence of his mental retardation as a factor mitigating against his guilt or the infliction of the death penalty.[7]

## CONCLUSION

For the reasons set forth above, we DENY Bell's Motion for Certificate of Probable Cause and his Motion for Stay of Execution.

EDITH H. JONES, Circuit Judge, specially concurring:

The veil of civility that must protect us in society has been twice torn here. It was rent wantonly when Walter Bell robbed, raped and murdered Ferd and Irene Chisum. It has again been torn by Bell's counsel's conduct, inexcusable according to

---

7. We can conceive a hypothetical situation in which a retarded defendant, egged on by others, "deliberately" committed a capital crime and, because of his amenability to suggestion, might exhibit "future dangerousness." In such a case, it is arguable that the Texas Statute does not accommodate mental retardation fully in the punishment phase issues. No such hypothetical arises on the facts of this case.

ordinary standards of law practice. On two occasions, as our panel opinion demonstrates, he has deliberately waited until one week before his client's scheduled execution date to raise claims of which he knew at least several months earlier. Most recently, he reneged on an agreement in writing with the state of Texas that, in exchange for obtaining a further delay of execution, he would file a succeeding habeas petition no later than two weeks prior to the October 14 execution date now set. The state and federal district courts found that he abused the writ of habeas corpus, and I agree with them.

If Bell's claims entitled him to prompt relief in this court, such delaying tactics would be an unpardonable pretext for the larger goal of "proving" the death penalty unconstitutionally arbitrary by stalling its implementation whenever possible. As it is, counsel was certainly aware that this court, bound by the authority of *Penry*, could not grant relief. His motive in late-filing must have been to play "chicken" with the state and federal courts on the eve of execution.

This is not a novel situation, although counsel's breaching of an agreement with the state renders it more egregious than the average death-case delaying procedure. Our court has previously expressed its frustration with these tactics. See *Brogdon v. Butler*, 824 F.2d 338, 344 (5th Cir. 1987); *Bridge v. Lynaugh*, 856 F.2d 712 (5th Cir.1988). That such tactics are antithetical to this grave aspect of the law enforcement process was eloquently stated by Chief Judge Clark, concurring in *Brogdon:*

> Justice requires that in each instance capital punishment be imposed with maximum assurance of scrupulous legality. But, justice equally demands an assurance that such punishment be imposed when the minds of men still retain memory of the crime committed. Otherwise, capital punishment becomes a sort of second, albeit legal, crime.

Since, more than one year after *Brogdon* issued, counsel in death penalty cases seem completely unreceptive to our verbal admonitions, I would advocate considering the imposition of sanctions in cases such as this. At a minimum, I would suggest that counsel who have engaged in delaying tactics should be struck from the rolls of the Fifth Circuit and not be allowed to practice in our court for a period of years. I would not rule out imposition of other sanctions as well. A condemned man's life and society's interest in enforcing the death penalty justly are matters too important to leave to procedural games.