Justin Lee MAY, Petitioner–Appellant,

v.

James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.

No. 89–6091.

United States Court of Appeals, Fifth Circuit.

June 12, 1990.

Rehearing and Rehearing En Banc Denied July 16, 1990.

David T. Shelledy, New Haven, Conn. (Court-appointed), Bruce M. Bettigole, Washington, D.C. (Court-appointed), Barbara Lowe, Susman, Godfrey & McGowan, Houston, Tex. (Court-appointed), Robert E. Morin, Fisher, Morin & Kagan–Kaus, Francis M. Gregory, Jr., Southerland, Asbill & Brennan, Willard K. Tom, John H. Flemming, Washington, D.C. (Court-appointed), for petitioner-appellant.

Dana E. Parker, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before REAVLEY, KING and JOLLY, Circuit Judges.

PER CURIAM:

In February 1985 petitioner Justin Lee May was convicted of capital murder and sentenced to death. In the intervening five years he has pursued the usual direct appeal as well as habeas proceedings in state and federal courts, without success. The district court having granted certificate of probable cause, May's habeas appeal reaches us.

## I. Background

A full review of the facts can be found in *May v. State*, 738 S.W.2d 261, 264–66 (Tex. Crim.App.), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987). The following summarizes the facts necessary to understand the issues addressed in this appeal.

Frank and Jeanetta Murdaugh were murdered June 27, 1978, while working at their Western Auto store in Freeport, Texas. The murders went unsolved for over five years. In the spring of 1984 Justin Lee May and Richard Miles were indicted for both murders. May ultimately was tried solely for the murder of Jeanetta Murdaugh. Miles was offered a plea bargain, pursuant to which he was allowed to plead guilty to nonaggravated, noncapital murder after he testified against May.

Miles testified that on June 26, 1978 he and May drove from Houston to Freeport. Miles carried a .32 caliber pistol in his glove compartment. After they registered at a hotel under an assumed name, Miles went to visit a friend. Upon returning, May outlined the plans to rob the Western Auto store the next day. May had gone to the store and stated that he was looking for a shotgun for a relative, who would come in later to pick it up. Miles was to enter the store first, posing as the relative, and May was to follow, armed with Miles' pistol. Miles was to select a shotgun and load it for additional security.

On June 27 Miles drove past the store and let May out at a corner. He parked the car and went into the store with May following just behind him. Jeanetta Murdaugh was behind the counter and Frank was arranging inventory on a shelf. Miles selected a shotgun, which Frank handed to him. Miles then picked up some shells and began loading the gun. Frank told Miles that loading was prohibited on the premises and, when Frank reached for the gun, May shot him with the .32 revolver. Miles, startled by the shot, fired the shotgun into the ceiling, dropped the weapon, and then ran to the front door. Miles then heard numerous shots and saw May shoot at Jeanetta Murdaugh. Miles went to his car and drove it into an alley behind the store. May later ran out of the store with an armload of guns, dropping one in the alley. May put the rest of the guns into the car, got in, and returned the .32 revolver to Miles. Miles' testimony was materially corroborated by other witnesses and by physical evidence at the store.

Miles further testified that May told him several months later that his mother had disposed of a rifle and that a friend, Jerry Barmore, would dispose of the rest of the guns. Additionally, Retha May, appellant's mother, identified a letter from her son directing her to dispose of a .308 rifle and a detective indicated that a .308 rifle that had been stolen from the store had not been recovered.

At the close of trial, May was convicted of capital murder for intentionally causing the death of Jeanetta Murdaugh during the course of a robbery. At the punishment phase, the State introduced evidence of May's six prior convictions: a 1969 conviction for robbery by assault, two 1976 convictions for unlawfully passing forged instruments, a 1976 conviction for aggravated assault, a 1978 conviction for aggravated assault, and a 1978 conviction for first degree murder.

The 1978 murder conviction was the result of a guilty plea and the original indictment was for three capital charges of murder in the course of robbery, the so-called Yale Street murders. In the 1978 aggravated assault charge, May had used a .38 caliber pistol that was later shown to have fired some of the fatal shots in the Yale Street murders. Miles was also a prime suspect in those killings.

As mitigating evidence Ralph Price, a work supervisor during a prior incarceration, testified that May's work attendance was good, that he was a good welder and followed instructions, and that no disciplinary violations kept him from working. May's sister, Betty Bevel, testified that in January 1984, she and her two children traveled to Houston to spend a week with May while he was on furlough from prison. According to Bevel, May played Atari, watched television, and visited with her children. During this week, May did not get into any altercations, did nothing violent, and displayed no flashes of temper.

The jury returned affirmative answers to the Texas special issues on deliberateness and future dangerousness and May accordingly was sentenced to death. Tex.Code Crim.Proc.Ann. art. 37.071(b)(1)–(2), (e) (Vernon 1989). On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and the sentence, *May v. State,* 738 S.W.2d 261, 274 (Tex.Crim.App.1987), and the United States Supreme Court denied certiorari, *May v. Texas,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987).

After May's execution was set for February 10, 1988, he sought state habeas corpus relief. The warrant of execution was withdrawn, but on May 10, 1988 the trial court recommended denial of the writ and rescheduled the execution for June 15, 1988. The Texas Court of Criminal Appeals subsequently denied habeas relief and May's request for a stay of execution. *Ex parte May,* Writ No. 17,992–01 (Tex.Crim.App. June 3, 1988).

On June 9, 1988 May filed a petition for federal habeas relief and a stay of execution before the district court. The district court granted the stay of execution. The parties filed cross-motions for summary judgment and May additionally moved for discovery and appointment of experts. On August 21, 1989 the district court issued a Memorandum Opinion and Order, denying all habeas relief. May appeals, raising the following claims:

1) The state violated May's rights to a fair trial and due process by presenting a co-defendant's coached testimony and by interfering with cross-examination of that witness through intimidation.

2) May was improperly denied an instruction on the law governing parole.

3) May's jury was selected in a manner that lead to an underrepresentation of minorities in violation of his Sixth and Fourteenth Amendment rights.

4) May was improperly denied a jury instruction on the lesser included offense of robbery.

5) The state withheld material exculpatory evidence in violation of *Brady v. Maryland.*

6) May's Eighth Amendment rights were violated because the Texas sentencing procedures prevented full consideration of the mitigating value of May's good character evidence and inhibited the presentation of evidence regarding May's mental impairment and long history of child abuse.

In its Memorandum Opinion and Order, the district court considered each of these claims. After careful review of the record and the arguments of counsel both in their briefs and at oral argument, we are in substantial agreement with the court's analysis on points one through four. We therefore affirm the district court's denial of relief on those grounds. We also conclude that May is not entitled to relief on points five and six. However, some further discussion of those claims is warranted.

## II. Analysis

### A. *Brady* Material

█ Eight months prior to trial, May requested discovery of all exculpatory evidence, including the Yale Street and Murdaugh offense report files.[1] The Yale Street file was not produced until requested by the federal district court. Although that court found that the Yale Street file

---

**1.** Although May raised three *Brady* claims, we believe that the other claims were adequately considered by the district court.

did not contain *Brady* material, it did not consider one piece of evidence—the rifle May asked his mother to retrieve. In closing argument, the State emphasized that May had written his mother and asked that she retrieve a rifle of the same caliber as the one that had been taken from the Western Auto store, claiming that it was additional evidence connecting May to the crime. However, the Yale Street file contains a statement by one Bob Burns describing the .308 caliber rifle that Retha May retrieved as a Montgomery Ward brand, while the one stolen from the Western Auto store was a Revelation brand rifle.

■ May claims that if he had had this information, he could have rebutted a crucial aspect of the State's case and exposed as irrelevant the only incriminating evidence that was in his own handwriting. He therefore claims that in failing to disclose the Yale Street murder report the State withheld material information in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). We regard this discrepancy as peripheral and harmless. Furthermore, the government is not obligated to furnish information that is fully available to the defendant or that could be obtained through reasonable diligence. *United States v. Newman*, 849 F.2d 156, 161 (5th Cir.1988). Although the issue regarding the rifles was raised during rebuttal, May could reasonably have anticipated that the gun would become an issue in the case, since it was mentioned in Miles' pretrial statement.[2] May had pawned the rifle to Burns and knew its brand, or how to ascertain the brand, if they were two different guns. The evidence therefore was not subject to due process disclosure requirements. *Mattheson v. King*, 751 F.2d 1432, 1444 (5th Cir.1985), *cert. dismissed*, 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986); *see Newman*, 849 F.2d at 161.

**B. Texas Sentencing Scheme**

■ In conjunction with his petition for state habeas relief and a claim of ineffective assistance of counsel, May submitted the affidavit of Dr. James Merikangas, a neurologist and psychiatrist, who had examined May on December 16, 1987.[3] Discussions with May, his mother, and his sister revealed the following information: May's birth followed a complicated pregnancy, during which time his mother was extremely ill and was medicated for approximately six weeks. May was abused frequently as a child by his now-deceased father. From the time he was three or four years old, May was beaten with coat hangers, belts, and extension cords and on at least one occasion was beaten to unconsciousness. Other head injuries include a concussion sustained during a car accident and in 1975 he was hospitalized for confusion and unexplained loss of consciousness. May is also an alcoholic and has suffered numerous alcoholic blackouts.

Upon examination, Dr. Merikangas found "demonstrable and significant neurological brain damage" that "probably resulted from head injuries, malnutrition and other fetal damage, and [his] other medical problems." Dr. Merikangas concluded that "May's impulse control is substantially impaired by neurological brain damage" and that "[t]he trauma and injuries Mr. May suffered as a physically abused child may have caused impairment in his social functioning and emotional development, and have substantially impaired his ability to reflect on the appropriateness of his actions before manifesting them." Additionally, in Dr. Merikangas' opinion, May has the ability to function well socially and occupationally in a structured setting. He also stated that May is not currently psychotic and is not dangerous when alcohol is not available to him and therefore does not pose a significant threat of violence in prison.

---

**2.** In his pretrial statement, Miles claimed that after his arrest he and May had "talked about the gun his mother threw in the river and [Justin] said he had told [investigators] it was an antique."

**3.** Although May raised an ineffective assistance of counsel claim before the district court, he has not pursued that claim on appeal.

May's trial counsel submitted an affidavit stating that at the time of trial he neither developed nor presented this evidence because it would only serve to bolster the State's case with respect to the future dangerousness question. May claims that, because he was given no assurance that an instruction regarding the effect of mitigating evidence would be given, he was effectively precluded from presenting evidence of his disadvantaged background and mental impairments.[4] The district court rejected May's argument on the grounds (1) that any *Penry* claims were procedurally barred; and (2) that May was not entitled to relief for his deliberate failure to present *Penry* evidence.

 We cannot agree with the conclusion that May's claim was procedurally barred. Federal review may be barred only if the last state court to consider the claim expressly and unambiguously based its denial of relief on a procedural default. *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). The Texas Court of Criminal Appeals considered a challenge to the sentencing instructions. However, it did not mention any procedural error, but instead denied relief with an order expressly based on the merits.[5] *Ex Parte May,* Writ No. 17,992–01.

We do agree, however, that May's *Penry* claim must fail. Had May offered evidence of his abusive childhood and his resultant neurological damage, it is quite clear that under Texas law that evidence would have been admissible. *See Burns v. State,* 761 S.W.2d 353, 356–59 (Tex.Crim.App.1988); *Johnson v. State,* 691 S.W.2d 619, 626 (Tex. Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985); *Cass v. State,* 676 S.W.2d 589, 592 (Tex.Crim. App.1984). May, however, made a tactical decision to neither develop nor present this evidence at trial. We have previously ruled that a defendant's deliberate failure "to introduce mitigating evidence as a tactical decision ... does not come within the requirements announced in *Penry.*" *De-Luna v. Lynaugh,* 890 F.2d 720, 722 (5th Cir.1989); *see also Williams v. Lynaugh,* 837 F.2d 1294, 1296–98 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3260, 106 L.Ed.2d 605 (1989); *Bell v. Lynaugh,* 699 F.Supp. 597, 600 (E.D.Tex.), *aff'd on other grounds,* 858 F.2d 978 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3262, 106 L.Ed.2d 607 (1989). Accordingly, the district court's order denying all habeas relief is AFFIRMED.

REAVLEY, Circuit Judge, with whom KING, Circuit Judge, joins, specially concurring:

I join the court's affirmance of Justin Lee May's death sentence because I believe it mandated by controlling precedent. I write separately, however, to express my view of the injustice produced through the Texas sentencing scheme and the contradictory federal law that has upheld that scheme. May, through the efforts of his counsel, has been caught in a legal web, the beginnings of which can be traced to *Jurek* and its upholding of the facial constitutionality of the Texas statute. *See Jurek v. Texas,* 428 U.S. 262, 276–77, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976) (Stevens, J., plurality).

In the last fourteen years, the Supreme Court has consistently stated that a capital sentencing jury must be able to consider the circumstances of the crime as well as the background and character of the defendant before choosing between a life and a death sentence. *See Penry v. Lynaugh,* —— U.S. ——, 109 S.Ct. 2934, 2951, 106 L.Ed.2d 256 (1989); *Hitchcock v. Dugger,*

---

**4.** With regard to the evidence May actually introduced during the punishment phase, we agree with the district court's conclusion that the jury was able to give effect to that evidence through the special issue on future dangerousness. *See Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 2333–34, 101 L.Ed.2d 155 (1988) (O'Connor, J., concurring); Tex.Code Crim.Proc. Ann. art. 37.071(b)(2) (Vernon 1989).

**5.** The question of whether *Penry* claims are subject to procedural bar rules under Texas law is currently pending before the Texas Court of Criminal Appeals. *See Selvage v. Collins,* 897 F.2d 745 (5th Cir.1990).

481 U.S. 393, 107 S.Ct. 1821, 1824, 95. L.Ed.2d 347 (1987); *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 1672–73, 90 L.Ed.2d 1 (1986); *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 2743–44, 77 L.Ed.2d 235 (1983); *Eddings v. Oklahoma,* 455 U.S. 104, 113–15, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982) (Powell, J., plurality); *Lockett v. Ohio,* 438 U.S. 586, 604–05, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978) (Burger, C.J., plurality); *Woodson v. North Carolina,* 428 U.S. 280, 303–04, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (Stewart, J., plurality); *Gregg v. Georgia,* 428 U.S. 153, 197–98, 96 S.Ct. 2909, 2936–37, 49 L.Ed.2d 859 (1976) (Stewart, J., plurality).

When first analyzing the Texas statute for conformity with this requirement, the Court examined the three statutory questions—on deliberateness, future dangerousness, and the reasonableness of a response to provocation by the deceased—to determine "whether the enumerated questions allow[ed] consideration of particularized mitigating factors." *Jurek,* 428 U.S. at 272, 96 S.Ct. at 2956. Because the Texas Court of Criminal Appeals broadly interpreted the second question as permitting consideration of any mitigating evidence, the *Jurek* Court upheld the statute's constitutionality. *Id.; see Estelle v. Smith,* 451 U.S. 454, 472–73, 101 S.Ct. 1866, 1878, 68 L.Ed.2d 359 (1981); *Lockett,* 438 U.S. at 606–07, 98 S.Ct. at 2966. The Texas Court of Criminal Appeals has adhered to this interpretation, permitting the presentation of a wide range of mitigating evidence, *see, e.g., Johnson v. State,* 691 S.W.2d 619, 626 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985), and reversing cases in which the trial court has excluded mitigating evidence, *see Burns v. State,* 761 S.W.2d 353, 358 (Tex. Crim.App.1988); *Cass v. State,* 676 S.W.2d 589, 592 (Tex.Crim.App.1984).

Accordingly, at least until 1988, when *Franklin v. Lynaugh* called into question the sentencing jury's ability to consider all mitigating evidence, 108 S.Ct. 2320, 2333 (O'Connor, J., concurring), the Fifth Circuit and the Texas Court of Criminal Appeals consistently held that additional instruction was not constitutionally mandated for con-

sideration of any mitigating evidence, *see, e.g., Penry v. Lynaugh,* 832 F.2d 915, 926. (5th Cir.1987), *reversed,* —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Williams v. Lynaugh,* 837 F.2d 1294, 1295– 96 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3260, 106 L.Ed.2d 605 (1989); *Riles v. McCotter,* 799 F.2d 947, 952–53 (5th Cir.1986); *Esquivel v. McCotter,* 777 F.2d 956, 957–58 (5th Cir.1985), *cert. denied,* 475 U.S. 1132, 106 S.Ct. 1662, 90 L.Ed.2d 204 (1986); *Cordova v. State,* 733 S.W.2d 175, 189–91 (Tex.Crim.App. 1987), *cert. denied,* 487 U.S. 1240, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988); *Gardner v. State,* 730 S.W.2d 675, 702 (Tex.Crim.App.), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987); *Clark v. State,* 717 S.W.2d 910, 920 (Tex.Crim.App.1986), *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987); *Fierro v. State,* 706 S.W.2d 310, 318 (Tex.Crim.App.1986); *Anderson v. State,* 701 S.W.2d 868, 873–74 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986).

However, as demonstrated by the Court's rendering of *Penry,* application of the Texas sentencing statute can be unconstitutional. 109 S.Ct. at 2952. The fact that the Supreme Court reached an opposite conclusion with regard to some mitigating evidence can be traced to an oversight in the original *Jurek* analysis. In considering the statute's constitutionality, the *Jurek* plurality focused primarily on the Texas Court of Criminal Appeals' broad interpretation of the statute, which permitted the presentation of a large array of evidence. *Jurek,* 428 U.S. at 272–73, 96 S.Ct. at 2956–57. Any restrictions imposed by the statutory questions were considered as merely guiding and focusing the jury's consideration of mitigating evidence. *Id.* at 273–74, 96 S.Ct. at 2957. The Justices, however, did not carefully consider the statutory questions from the perspective of an individual juror and the variety of evidence that could be relevant to the sentence, independent of the special issues. A juror who concludes that the evidence requires affirmative answers to questions on deliberateness and future dangerousness,

but who also concludes that the defendant's character, moral culpability, or social worth mitigates against a death sentence, may not (and should not) feel at liberty to express her ultimate conclusion, since it requires nullification of one of the statutory questions. We can never be certain under this statutory scheme that a juror in this predicament will not be silenced by the need to comply with the law's facial requirements. *Graham v. Collins*, 896 F.2d 893, 896 n. 3 (5th Cir.) (petition for rehearing en banc granted, 903 F.2d 1014) (5th Cir. June 4, 1990); *see Jurek*, 428 U.S. at 279, 96 S.Ct. at 2959 (White, J., concurring) ("[I]t should not be assumed that juries will disobey or nullify their instructions."). In *Penry*, the Court found that without additional instruction this risk was too great with regard to evidence of mental retardation and child abuse. 109 S.Ct. at 2952.

However, at the time of May's trial, the state and federal courts consistently maintained that the Texas sentencing scheme is constitutionally applied without additional instruction. *O'Bryan v. Estelle*, 714 F.2d 365, 385 (5th Cir.1983), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Spivey v. Zant*, 661 F.2d 464, 471 & n. 10 (5th Cir. Unit B Nov. 1981), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *Granviel v. Estelle*, 655 F.2d 673, 675–77 (5th Cir.1981), *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); *Johnson*, 691 S.W.2d at 626; *Stewart v. State*, 686 S.W.2d 118, 121 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985); *Lackey v. State*, 638 S.W.2d 439, 455 (Tex. Crim.App.1982); *Quinones v. State*, 592 S.W.2d 933, 947 (Tex.Crim.App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980); *see Penry v. State*, 691 S.W.2d 636, 654–55 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986).

This fixed state of the law left defense counsel representing victims of child abuse and mental impairment with a tactical dilemma: (1) either to present the mitigating evidence, which would do more harm than good by bolstering the state's case with regard to future dangerousness, and then

to pursue a losing constitutional argument; or (2) to withhold that evidence and hope that other arguments would persuade the jury to impose a life sentence. Any capable defense attorney would pursue the latter course, as did May's counsel.

Counsel's tactical decision, wise and necessary at the time, may be considered imprudent today because of an unpredictable change in the law. The important reality is that May's jurors were prevented from hearing extremely probative evidence on his moral culpability and on the appropriateness of a death sentence. Consequently, May has been deprived of the sentencing jury's fully informed judgment of his crime and his character. He has been caught in a web spun of words and logic that, in the end, has deprived May of his constitutional rights, a deprivation that may cost him his life.