David Lee HOLLAND, Petitioner–Appellant,

v.

James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.

No. 91–5093.

United States Court of Appeals, Fifth Circuit.

Dec. 17, 1991.

David Chamberlain, Lea & Chamberlain, Austin, Tex. (Court-appointed), for petitioner-appellant.

Dan Morales, Atty. Gen., and William C. Zapalac, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before POLITZ, KING and SMITH, Circuit Judges.

BY THE COURT:

Before the court is an application for a certificate of probable cause and stay of execution in David Lee Holland's first federal habeas petition. The stay of execution is GRANTED pending this court's en banc decision in Graham v. Collins, No. 88–2168 on the docket of this court.

JERRY E. SMITH, Circuit Judge, dissenting:

I respectfully dissent from the decision of my able and conscientious colleagues to grant a stay of execution in this matter. The majority has shown no basis for a constitutional violation or for the interference with the state criminal process that is implicated by a stay of execution.

### I.

Specifically, the majority has failed to show, or even to address, whether the standards for a stay of execution have been satisfied in this case. It is well established that a stay of execution may be granted

only if the following questions can be answered in the affirmative:

(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.

*Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir.), *cert. denied*, 483 U.S. 1036, 108 S.Ct. 6, 97 L.Ed.2d 796 (1987). As to the first requirement, we have elaborated that in a capital case, "while the movant need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities [i.e. the other three factors] weighs heavily in favor of granting the stay." *O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir.1984) (brackets in original). Indeed, as I discuss below, the issues presented by this petitioner fall far short of constituting a substantial case on the merits, much less one of likelihood of success on the merits.[1]

## II.

David Lee Holland is scheduled to be executed after midnight on December 18, 1991. On December 11, 1991, he filed a petition for writ of habeas corpus and motion for stay of execution in federal district court. On December 17, 1991, the district court denied the petition for writ of habeas corpus, a certificate of probable cause to appeal, a stay of execution, and an evidentiary hearing. It granted the state's motion for summary judgment and the petitioner's request to proceed *in forma pauperis*. At this eleventh hour, Holland now comes to this court, requesting a certificate of probable cause and a stay of execution. Holland makes no assertion of factual innocence but raised some fifteen points in the

district court, involving the penalty phase of his trial.

## III.

Holland was indicted for the capital murder of Helen Barnard while in the course of committing and attempting to commit robbery. The offense occurred in the course of Holland's robbery of a savings and loan branch. The facts are amply set forth in the opinion of the Court of Criminal Appeals affirming on Holland's direct appeal. *See Holland v. State*, 761 S.W.2d 307, 311–12 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989).

## IV.

Following Holland's indictment, a unitary trial was conducted on February 26, 1986. After jury selection, Holland pleaded guilty to the charge of capital murder. The jury then returned affirmative answers to the two Texas special issue questions it was required to answer pursuant to former Tex.Code Crim.Proc. Art. 37.071(b)(1), (2). The Court of Criminal Appeals then affirmed. *Holland v. State*, 761 S.W.2d 307 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989). Holland filed a timely state petition for writ of habeas corpus on July 26, 1989. On October 16, 1991, the Texas Court of Criminal Appeals issued an opinion denying all relief. *See Ex parte Holland*, No. 70,-970 (Tex.Crim.App. Oct. 16, 1991). The state trial court then set Holland's execution for some time after midnight on December 18, 1991. On appeal, Holland raises only two issues in support of his motion for stay: mitigating evidence and the voluntariness of his confession.

## V.

As his primary claim in this petition, Holland asserts that the special issues answered by the jury pursuant to Tex.Code Crim.P. art. 37.071 precluded the jury from

---

1. Certainly there is precedent in this circuit for a panel's deciding a capital case while another case, raising arguably related issues, is pending on rehearing en banc. *See Selvage v. Lynaugh*, 842 F.2d 89, 91 (5th Cir.1988), *vacated on other grounds*, 494 U.S. 108, 110 S.Ct. 974, 108 L.Ed.2d 93 (1990).

considering evidence presented by Holland at the sentencing phase of the trial and giving full mitigating effect to that evidence. (Only the second special issue is in question here, as Holland's attorney conceded to the jury that it should answer the first special issue in the affirmative.) The second statutory issue, answered affirmatively by the jury, is whether there is "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

As set forth in Holland's petition, the supposedly mitigating evidence that Holland presented included an exemplary work record, the lack of any violent criminal past, a candid confession by Holland immediately after his arrest, Holland's full cooperation in the state's investigation of the crime, Holland's unconditional guilty plea, and a troubled family history. In *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the Court held that the Texas special issue scheme precludes juries from giving mitigating effect to certain types of mitigating evidence, specifically, in Penry's case, evidence of child abuse and mental retardation. *Penry* applied the holding of *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1980), which had acknowledged that the Texas special issues violate the Eighth Amendment if the defendant's evidence either is "not relevant to the special verdict question" or has "relevance to the defendant's moral culpability beyond the scope of the special verdict questions." *Id.* at 185, 108 S.Ct. at 2333 (O'Connor, J., concurring).

I disagree with Holland's assertion that, for purposes of determining the constitutionality of the Texas sentencing scheme as applied to Holland, the evidence presented by Holland is similar to that presented by Penry. Unlike the evidence presented by Penry, Holland's mitigating evidence readily could be considered by the jury in answering the second interrogatory. That evidence was introduced and presented to the jury as an attempt to show that the crime in question was an aberration from Holland's normal non-violent character. Accordingly, that evidence fits squarely within the second issue, as it is wholly

relevant to the question of whether there was a probability that Holland would commit future acts of violence.

Holland's primary effort before the jury at the sentencing hearing was to show that Holland had no violent criminal past and that the incident in question was a result of specific family and financial pressures and did not reflect an overall or continuing tendency to commit future acts of violence. Holland's attorney argued that his peaceful and hard-working past showed that he would likely be that way in the future; he also asserted that Holland had shown remorse for what he had done and had accepted responsibility for his crime, thus indicating that he was capable of rehabilitation.

The nature of this evidence is in stark contrast to that in *Penry*. There, the evidence of mental retardation and child abuse was mitigating in the sense that a jury could consider it to lessen Penry's culpability. The defect in the Texas scheme, as applied to Penry, however, was that such evidence could not be considered as mitigating in terms of the second special issue but only could be aggravating in that it could be interpreted as indicating a likelihood of future dangerousness. This is what the *Penry* Court meant by the "two-edged" nature of the *Penry* mitigating evidence: that, absent additional instruction, a death sentence imposed under the Texas special issues is unconstitutional if the defendant's evidence mitigates against a death sentence for reasons wholly unrelated to—and independent of—the special issue inquiries. Thus, Holland's argument, seeking to liken his mitigating evidence to Penry's, is without merit, and he is entitled to no relief based upon this argument.

This court has consistently held that the sort of evidence claimed here to be mitigating fits squarely within the second Texas special interrogatory and can be given proper effect under *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). For example, in *May v. Collins*, 904 F.2d 228, 230 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 770, 112 L.Ed.2d 789 (1991), we held that evidence

of good work habits and a good employee record could be considered by the jury under the second jury interrogatory. "With regard to the evidence May actually introduced during the punishment phase, we agree with the district court's conclusion that the jury was able to give effect to that evidence through the special issue on future dangerousness." *Id.* at 232 n. 4 (citing *Franklin*). In *Russell v. Lynaugh*, 892 F.2d 1205, 1214–15 (5th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 2909, 115 L.Ed.2d 1073 (1991), we held that the petitioner's crime-free background could be considered by the jury and that the "second special issue ... would have provided the jury with an adequate vehicle to give mitigating effect to that evidence" (citing *Penry,* 109 S.Ct. at 2948). In *McCoy v. Lynaugh,* 874 F.2d 954, 966 (5th Cir.), *stay denied,* 490 U.S. 1086, 109 S.Ct. 2114, 104 L.Ed.2d 674 (1989), we determined that the fact that the petitioner had not shown any generally violent tendencies bore directly on the second issue regarding future dangerousness and "could easily be considered by the jury." Additionally, in *Bridge v. Lynaugh,* 856 F.2d 712, 715 (5th Cir.), *modified on rehearing,* 860 F.2d 162 (5th Cir. 1988), *modified on other grounds,* 863 F.2d 370 (5th Cir.1989), *vacated on other grounds,* 494 U.S. 1013, 110 S.Ct. 1313, 108 L.Ed.2d 489 (1990), the petitioner argued, in mitigation, that he had not been connected with any violent crime before the incident in question. We concluded that that evidence "clearly could properly be addressed under the Texas law." *Id.* Thus, Holland raises no issue of arguable merit in regard to the limited mitigating evidence that he presented to the jury, as the jury was able to give ample effect to that evidence through the second jury interrogatory.

## VI.

Holland asserts that the state secured a confession from him in the absence of a valid waiver of his right to remain silent, in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The state trial court conducted a thorough hearing on this matter, producing a transcript of 143 pages. That court also filed five pages of findings of fact and conclusions of law, finding that "the confession of the Defendant was freely and voluntarily made without any compulsion or persuasion and that it is admissible on the trial of the case on its merits."

The record shows that Holland was administered his *Miranda* warnings when he was first brought to the police station, even though he was not then under arrest, and that he knowingly, intelligently, and voluntarily waived his rights and talked with the police. Immediately after the police decided to arrest him at 12:20 a.m., he was given his *Miranda* warnings again, at which time he stated that he no longer wished to speak with the police. He did not request an attorney, and there was no further questioning at that time. About three hours later, he was taken before a magistrate and again warned of his rights; he made no statement, nor did he request an attorney.

Detective Chesson, who had known Holland for some time because of prior investigations of Holland unrelated to the instant offense, went to Holland's house to execute a search warrant. At about 4:00 o'clock, Chesson received a telephone call from another officer who stated that Holland wished to speak to Chesson.

Chesson returned to the police station and sat down with Holland and asked Holland what he could do for Holland. Chesson testified that this was not a conversation that he had initiated. Holland asked Chesson whether Chesson could arrange for Holland to meet with Holland's wife. Chesson testified, "He said that he had some things that he wanted to tell her and then he, in his words, would tell me what I wanted to know, or I will tell you what you want to know." Chesson agreed to summon Holland's wife but specifically testified that he did not make a deal with Holland, such as an agreement that Holland's wife would be made available only if Holland then confessed.

Mrs. Holland was called and said she would be immediately available, but Holland decided that he wanted to get some rest before talking with her. Significantly, Chesson, in his conversation with Holland

at approximately 4:30 a.m., mentioned that Chesson would have to be present in any meeting between Holland and his wife, but "I told him that if he were meeting with an attorney, I would not be able to do so, I would have to leave them alone...." Despite this further mention to Holland of the availability of an attorney (and the availability of additional privacy if an attorney were present), Holland at no time during these conversations requested an attorney.

Mrs. Holland appeared at approximately 8:00 a.m. and met with her husband for approximately twenty-five minutes. At no time did Holland suggest that they obtain an attorney. After Mrs. Holland left, Chesson sat down to talk with Holland again. "I asked Mr. Holland if he wanted to talk to me." And his acknowledgement was, "What do you want to know?" Then Holland proceeded to confess the crime to Chesson.

The state trial court made detailed findings regarding the voluntariness and admissibility of the confession. The court concluded that prior to making the confession, Holland was warned of his rights as required by *Miranda* and that he "did then knowingly waive his right to an attorney and did then freely and voluntarily without being induced by any compulsion, threats, promises, or persuasion, made an oral confession...." The court specifically found that the interview with Chesson, which constituted the confession, "was initiated entirely by Defendant." The court noted that Holland had received three separate *Miranda* warnings, never invoked his right to counsel, and gave the oral confession "freely and voluntarily." The court found that "the confession was entirely voluntary and was not coerced or enticed" and that it was given "pursuant to his knowing and intelligent waiver of all rights guaranteed by *Miranda.*"

The state record is adequate to support the trial court's finding that, as required by *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), Holland's "right to cut off questioning" was "scrupulously honored." Accordingly, no constitutional violation has been shown in regard to the confession, and this issue is without merit.

## VII.

In the final section of its well-reasoned opinion analyzing the fifteen points raised at the last minute by Holland on appeal, the district court expressed its frustration with the timing of the habeas petition presented to it. Quite properly, the court explained its view as follows:

The Court has examined all of the pleadings and motions which were filed by the petitioner on December 12, 1991, including approximately 2,400 pages of testimony which was delivered to the Court on the 16th day of December, 1991.

Specific attention is called to the case of *Walter Bell, Jr. Petitioner-Appellant, v. James A. Lynaugh, Director, Texas' Department of Corrections, Respondent-Appellee,* dated October 13, 1988—an opinion written by Circuit Judge Jones.

The Court at page 338 stated:

"This Court has recently reiterated its frustration with a petition that is filed only one week prior to the scheduled execution, *Bridge v. Lynaugh,* 856 F.2d 712, (5th Cir.1988) (ellipsis in original)."

In *Woodard v. Hutchins,* 464 U.S. 377–378, 104 S.Ct. 752, 78 L.Ed.2d 541 (1984) appears the following pronouncement:

"A pattern seems to be developing in capital cases of multiple review in which claims that could have been presented years ago are brought forward—often in a piece meal fashion—only after the execution date is set or becomes imminent. Federal courts should not continue to tolerate—even in capital cases—this type of abuse of the writ of habeas corpus."

As this Court views this petition, it fits exactly within the purview of the rules stated by the Fifth Circuit in *Bell v. Lynaugh* [858 F.2d 978 (1988)], supra, and *Woodard v. Hutchins,* supra.

I agree with the sentiments expressed by the able district court in this regard. Although the Court of Criminal Appeals issued its decision on October 16, 1991, the attorney for the petitioner waited almost two months—until December 11, 1991—to file Holland's habeas petition. That document was 103 pages long, plus exhibits, and was accompanied by a twenty-one-page motion for stay of execution and for evidentiary hearing. There is no excuse for this sort of delay when a person's life hangs in the balance.

The habeas petition raised fifteen separate points, all of which are, as the district court found, without merit, and most of which are entirely vapid and, in several cases, frivolous. Presumably, counsel could have concentrated on one or two meritorious issues and filed a much more timely and succinct habeas petition. Instead, the habeas petition, filed less than a week before the scheduled execution date, informed the court that "Resolving these claims will require a thorough review of nearly one thousand pages of transcript at trial and documentary records at state post-conviction. [ ] Despite the seriousness and complexity of this matter, the case comes to the Court only days before Mr. Holland's scheduled execution."

The federal district court did a prompt and able job of reviewing the voluminous record and producing a comprehensive twenty-four-page opinion. While the case was under submission to the district court, the petitioner filed, on December 16, 1991, a forty-seven-page supplemental motion for stay of execution and evidentiary hearing responding to the state's reply that had been filed one day earlier. This demonstrates that the petitioner's attorneys have no difficulty turning out large volumes of work on short notice, when it is perceived to be to petitioner's benefit to file matters promptly.

Indeed, within approximately four hours of the issuance of the district court's opinion, petitioner's attorney, assisted by the Texas Resource Center, filed the instant twenty-nine-page motion for stay and application for certificate of probable cause to appeal. Remarkably, petitioner's attorneys blamed the lateness of the hour on the courts and the state. The statements in the petition are astonishing and seek to absolve petitioner and his counsel of any responsibility for the last-minute filings. For example, the petition contains the following statements:

Mr. Holland's post-conviction proceedings have been characterized by a complete lack of careful consideration or review.... Since that time, the treatment of Mr. Holland's issues has been swift and wholly inadequate.... The very first moment that the district court could have considered the arguments of both parties was approximately 4:00 p.m. on Sunday, December 15, 1991, when the respondent filed its answer.... Instead, in less than 24 hours, the district court took the pleadings filed and dismissed the petition.

The district court has held Mr. Holland's petition, without providing for an evidentiary hearing or argument and without acting on his Motion for Stay of Execution, until today, December 17, 1991, at 11:00 a.m., only 13 hours before Mr. Holland's scheduled execution. Counsel for Mr. Holland has therefore been required to file these Appellate pleadings without time to adequately read, digest, or respond to the District Court's Order.

Likewise, this Court is now faced with a death penalty case with a voluminous record only a few hours before the Respondent/Appellee puts Mr. Holland to death. This Court should not rush Mr. Holland to his death without considered and adequate review of his claims, for the first time, because of the arbitrary limit set by his execution date. Nor should this Court rush him to his death because of the District Court's eleventh hour actions.

... [*Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983),] implicates the right to appellate review, and imposes an obligation on the federal courts to "give careful attention" in the first instance to all non-frivolous constitutional claims.... Mr. Holland has

made such a showing, and *Barefoot* thus demands that this Court grant a stay of execution in order to allow itself a sufficient opportunity to consider and determine the constitutionality of Mr. Holland's sentence before permitting the respondent to put him to death.

It is obvious that fuller attention could have been given to this case, both by the district court and by the court of appeals, if the petition had been filed promptly rather than at what amounts to the eleventh hour. It is indeed amazing, but unfortunately all too common, that these matters are filed at the last minute with, as here, a plea that a stay is necessary in order for the court to give full and adequate consideration to the claims. The internal inconsistency in such an approach by habeas petitioners and their counsel is self-evident.

I have the greatest respect for my well-intentioned and more senior colleagues who constitute the majority of this panel and for their decision to issue a stay in this matter. Under the facts of this case, however, I must conclude that the prerequisites for granting a stay have not been established and that the petitioner's issues are wholly without merit. Under these circumstances, I respectfully dissent.