**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-10616
_____


ANDRE ANTHONY LEWIS

                                        Petitioner-Appellant,


v.



GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION

                                        Respondent-Appellee,


- - - - - - - - - -
Appeal from the United States District Court
for the Northern District of Texas
(93-CV-0329-G)
- - - - - - - - - -
December 21, 2000
**ON PETITION FOR PANEL REHEARING**

Before KING, Chief Judge, and DAVIS and WIENER, Circuit Judges.

PER CURIAM:[*]

     Petitioner-Appellant Andre Anthony Lewis has petitioned this

panel to rehear its decision to affirm the district court's

denial of his application for a writ of habeas corpus.  After a

---

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

review of Lewis's petition for panel rehearing, and in light of the Supreme Court's recent decision in (Terry) Williams v. Taylor, 120 S. Ct. 1495 (2000), we grant rehearing in part, vacate section II.C of the panel opinion as to its discussion of the punishment phase ineffective assistance of counsel claims, vacate the district court's judgment insofar as it denied habeas relief on Lewis's punishment phase ineffective assistance of counsel claims and remand for an evidentiary hearing solely on those claims. We also correct a legal misstatement in our panel opinion.

First, our unpublished disposition of Lewis's petition for habeas relief does contain a misstatement of law. The erroneous pronouncement appears in the discussion of Lewis's claim that his Sixth Amendment right to effective assistance of counsel, as clarified by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), was violated by the failure of counsel to present, at the punishment phase of the trial, evidence of Lewis's abusive childhood. Specifically, the statement (and accompanying footnote[1]) on page ten of our unpublished opinion that "[a]t the time of Lewis's trial, evidence of such abuse was not admissible relative to Texas's special issues at the

---

[1] Footnote 14 read as follows: "Lewis was found guilty on June 2, 1987, well prior to the Supreme Court's decision in Penry v. Lynaugh, 492 U.S. 302, 109 S. Ct. 2934 (1989) which set forth the current rule allowing evidence of abuse at the punishment phase of a capital trial."

punishment phase" is an incorrect statement of applicable law.

Lewis's trial occurred <u>before</u> the Supreme Court's decision in <u>Penry v. Lynaugh</u>, 492 U.S. 302 (1989); therefore, his counsel did not have the guidance of that decision in formulating Lewis's defense strategy. Nevertheless, evidence of abuse suffered by the defendant <u>was</u> admissible at the punishment phase of the trial, <u>see</u> <u>May v. Collins</u>, 904 F.2d 228, 232 (5th Cir. 1990),[2] so the assertion to the contrary in our original opinion was erroneous.

In light of our error, and due to <u>(Terry) Williams v. Taylor</u>, 120 S. Ct. 1495 (2000), an analogous case that was not briefed until the Request for a Panel Rehearing,[3] we withdraw the portion of section II.C in our panel opinion discussing ineffective assistance of counsel at the punishment phase and replace it with the following analysis.

As our decision to remand turns on the inescapable

---

[2] Lewis was entitled to introduce "as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." <u>Lockett v. Ohio</u>, 438 U.S. 586, 604 (1978); <u>see also</u> <u>Burger v. Kemp</u>, 483 U.S. 776, 789-90 n.7 (1987) (noting that evidence of childhood abuse and mental problems was "relevant mitigating evidence that the sentencer could not have refused to consider and could not have been precluded from considering had counsel sought to introduce it").

[3] <u>(Terry) Williams v. Taylor</u> was decided April 18, 2000. Upon the Petition for Rehearing, this court requested a response from Respondent-Appellee Gary L. Johnson, Director of the Texas Department of Criminal Justice, to address Lewis's post-<u>(Terry) Williams</u> ineffective assistance of counsel argument.

similarities between (Terry) Williams and the instant case, we are bound to discuss its reasoning.  In (Terry) Williams, the Supreme Court found that "Williams had a right--indeed, a constitutionally protected right--to provide the jury with the mitigating evidence that his trial counsel either failed to discover or failed to offer."  120 S. Ct. at 1513; see also Lockett v. Anderson, 230 F.3d 695, 711 (5th Cir. 2000) ("It is clear that defense counsel's failure to investigate the basis of his client's mitigation defense can amount to ineffective assistance of counsel.").  The Court undertook to apply the Strickland v. Washington, 466 U.S. 668, 687 (1984),[4] framework to hold that Williams was denied his constitutionally guaranteed right to effective assistance of counsel when his attorneys failed to investigate and present substantial mitigating evidence during the sentencing phase of his capital murder trial.

---

[4] The Strickland framework to determine ineffective assistance of counsel provides:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

4

Specifically, in regard to the first prong of deficient performance, the Court found that "[t]o establish ineffectiveness, a 'defendant must show that counsel's representation fell below an objective standard of reasonableness.'" (Terry) Williams, 120 S. Ct. at 1511 (quoting Strickland, 466 U.S. at 688).[5]

In concluding that Williams's counsel was deficient, the Supreme Court relied on several factors: (1) "counsel did not begin to prepare for that phase of the proceeding until a week before the trial," id. at 1514; (2) counsel introduced only three punishment phase witnesses, whose testimony amounted to the conclusion that Williams was a "nice boy," see id. at 1500; (3) counsel "failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish childhood," id. at 1514; (4) counsel's failure was not a result of strategy, but was based on an erroneous understanding of state law, see id.; (5) counsel had "failed to introduce available evidence that Williams was 'borderline

---

[5] As a benchmark for "objective" standards, the Court looked, as they had in Strickland, see 466 U.S. at 688, to the ABA Standards for Criminal Justice to find that "trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background." Terry Williams, 120 S. Ct. at 1515 (citing 1 ABA STANDARDS FOR CRIMINAL JUSTICE 4-4.1 cmt. at 4-55 (2d ed. 1980)). The Court then applied this standard to the particular facts presented in (Terry) Williams. See id.; see also Strickland, 466 U.S. at 687 (requiring a case-by-case determination for ineffective assistance of counsel claims).

mentally retarded' and did not advance beyond sixth grade in school," id.; (6) Williams had received a commendation from the prison, see id.; and (7) counsel failed even to return the phone call of a character witness who was willing to testify on Williams's behalf, see id.

Lewis argues that his state counsel was equally ineffective for failing to put on available and substantial mitigating evidence at the punishment phase of trial. First, like Williams's counsel, Lewis's counsel did not begin to prepare for the punishment phase of trial until one week before trial began. Lewis argues that according to the records of trial counsel, counsel only began meeting with family members to discuss mitigation evidence and strategy on May 22, 1987, one week before the trial began on May 27, 1987. Lewis alleges that from trial counsel's own records, only twelve hours of counsel's time was devoted to punishment phase investigation or legal strategy before trial. This omission is more troubling because counsel had eight months to prepare for trial in which they called no guilt-phase witnesses. See, e.g., Lockett, 230 F.3d at 714 (requiring "informed strategic choices"); Moore v. Johnson, 194 F.3d 586, 615 (5th Cir. 1999) ("Strickland does not . . . require deference to decisions that are not informed by an adequate investigation into the controlling facts and law."); Wilson v. Butler, 813 F.2d 664, 672 (5th Cir. 1987) (remanding for evidentiary hearing because record did not reflect whether

6

counsel made a sound strategic decision not to investigate and present mitigation evidence of troubled background and mental impairment).

Second, in comparison to the three witnesses called in Williams's case (including taped testimony from a psychiatrist), Lewis's sole punishment phase defense consisted of one witness, his grandmother.  The defense's entire punishment phase lasted for sixteen pages of trial transcript, with most of the direct examination objected to and stricken on hearsay grounds.  As has been discovered by federal habeas counsel, character witnesses, including Lewis's high school football coach and math teacher and Lewis's aunt, were willing to testify about Lewis's cognitive difficulties and abusive childhood, but were never contacted by defense counsel.  According to the affidavit evidence, Lewis's sister, Tammy Tonnette Lewis-Berry, was also willing to testify about the abuse and was even at the courthouse during the trial, but was never asked to testify.[6]

Third, Lewis's federal habeas counsel has adduced substantial mitigating evidence that was not investigated or used

_____

[6] Our concern is not with whether certain witnesses were or were not called.  See Strickland, 466 U.S. at 689 (recognizing the deference given to decisions of counsel and the "distorting effects of hindsight").  Instead, we concern ourselves with whether this omission was, in fact, a tactical decision.  See id. at 680 (recognizing that "[c]ounsel may not exclude certain lines of defense for other than strategic reasons."); Bouchillon v. Collins, 907 F.2d 589, 597 (5th Cir. 1990) ("Tactical decisions must be made in the context of a reasonable amount of investigation, not in a vacuum.").

in state court.  Like Williams, Lewis suffered from severe childhood physical, psychological, and sexual abuse, and experts have found neurological impairments that may have had a mitigating effect on the jury.  The allegations submitted in the affidavits of Lewis's habeas counsel include a childhood equally as disturbing and relevant to mitigation as that in (Terry) Williams.[7]  See (Terry) Williams, 120 S. Ct. at 1516 ("Mitigating evidence unrelated to dangerousness may alter the jury's

_____

[7] For example, Lewis's Petition for Panel Rehearing includes the following summary of Lewis's proffered mitigation evidence:

> Andre Lewis grew up in violent, drug-ridden areas of West Dallas, including the George Loving Projects which were renowned for high levels of lead contamination.  Massive amounts of documentary evidence were presented in Mr. Lewis's writ relating to his low intelligence, his horrific childhood characterized by severe physical, sexual and psychological abuse, neglect, poverty, chronic isolation, complete lack of positive role models and chemically dependent parents.  His father would make his children take off all their clothes and whip them on their genitals until they were bloody.  Dr. Daniel Jay Sonkin, a psychologist and expert on family violence, characterizes Mr. Lewis's childhood as 'one of the most severe cases' of abuse that he has ever reviewed.  Mr. Lewis was exposed to extremely toxic levels of lead . . . . Dr. Richard L. Peck conducted a psychological investigation of Andre Lewis in 1992 and found that his condition was consistent with that of trauma victims or victims of childhood abuse; he had significant cognitive deficits, was unable to process disparate pieces of information, had symptoms of neuropathy, had cognitive impairment symptoms consistent with lead poisoning. . . . Mr. Lewis was remembered by his teachers as being easily led, simple and quiet.  According to his football coaches, he could not understand the strategy of the game to the extent that they simply had to tell him to go with the ball.  These findings are confirmed by the results of neuropsychological testing performed by experts. . . . (citations to the record omitted).

selection of penalty."); see also Abdur'rahman v. Bell, 226 F.3d 696, 722 (6th Cir. 2000) (Cole, J., concurring in part and dissenting in part) ("Th[e] abuse, while not a justification for petitioner's criminal conduct, is relevant, mitigating evidence that should have been presented to the jury.").[8]

Fourth, again as in (Terry) Williams, this failure to introduce evidence was admittedly based on counsel's erroneous understanding of state law. The record includes two signed statements by counsel that their decisions were based on a belief that evidence of abuse at the punishment phase of Mr. Lewis's capital murder trial "was not relevant under the special issues in the Texas death penalty statute."[9] As discussed above, this belief was incorrect.[10]

Fifth, despite counsel's earlier request for a psychologist,

----

[8] While Lewis's state counsel have stated that they were aware of the abuse, they did not follow up on investigating and procuring documentary evidence to support this claim. We have previously required counsel who have been put on notice of possible abuse or other mitigating evidence to pursue that evidence, or to make an informed strategic decision not to pursue that evidence. See Moore, 194 F.3d at 616 ("[Counsel] testified that he was aware of Moore's troubled background at trial. That awareness, which included knowledge that Moore's family was physically abusive, should have triggered some sort of inquiry into Moore's background.").

[9] The lower court recognized this fact when it held: "Petitioner's trial counsel's affidavits preclude a finding that the decision not to present evidence of his abusive childhood was a tactical decision . . . ."

[10] As discussed infra, the fact that counsel erroneously understood the law may not be sufficient to find ineffectiveness.

9

and the court's tentative grant of funds for a psychologist,[11]
counsel never had Lewis undergo psychological testing.  As has
been demonstrated by Lewis's federal habeas counsel, such testing
may have developed mitigation evidence useful for the punishment
phase of trial.[12]  See Moore, 194 F.3d at 613-15 (granting relief
due in part to federal habeas counsel's production of
"substantial evidence of impaired mental development and
functioning, and some evidence of organic brain damage resulting
from severe trauma"); see also Loyd v. Whitley, 977 F.2d 149,
157-58 (5th Cir. 1992) (granting relief where counsel failed to
develop independent evidence of mental disease or defect).
Further, school records and teachers' affidavits were not
investigated to demonstrate Lewis's long-standing cognitive
difficulties.

Despite these factual similarities to the ineffective
assistance of counsel holding in (Terry) Williams, we cannot
reach the conclusion that Lewis's attorneys were deficient
without further factual development.  Our primary concern is that
Texas law at the time of Lewis's trial presented a vexing problem

---

[11] On March 6, 1987, the state court granted a motion
approving the appointment of a defense psychologist, but
requested a cost estimate for the proposed expert.  Despite its
availability, counsel neither provided the court an estimate nor
sought the services of a psychologist to evaluate Lewis.

[12] The fact that counsel initially requested the appointment
of a psychologist belies the argument that counsel was unaware of
any mental infirmities of Lewis.

for defense counsel seeking to introduce mitigating evidence.  As was ably argued in the State's Response to Appellant's Petition for Panel Rehearing, the existing Texas capital sentencing law created a dilemma[13] for counsel not to introduce certain mitigating evidence that might have a double-edged nature.[14]  As stated, the affidavits submitted by Lewis's counsel implicitly reflect this Hobson's choice not to introduce mitigating evidence of childhood abuse or mental impairment because they thought it

---

[13] As Judge Reavley recognized in <u>May v. Collins</u>:

This fixed state of the law left defense counsel representing victims of child abuse and mental impairment with a tactical dilemma:  (1) either to present the mitigating evidence, which would do more harm than good by bolstering the state's case with regard to future dangerousness, and then to pursue a losing constitutional argument;  or (2) to withhold that evidence and hope that other arguments would persuade the jury to impose a life sentence.  Any capable defense attorney would pursue the latter course, as did May's counsel. Counsel's tactical decision, wise and necessary at the time, may be considered imprudent today because of an unpredictable change in the law.  The important reality is that May's jurors were prevented from hearing extremely probative evidence on his moral culpability and on the appropriateness of a death sentence.  Consequently, May has been deprived of the sentencing jury's fully informed judgment of his crime and his character.  He has been caught in a web spun of words and logic that, in the end, has deprived May of his constitutional rights, a deprivation that may cost him his life.

904 F.2d 228, 234 (5th Cir. 1990) (Reavley, J., concurring).

[14] In the non-Texas <u>(Terry) Williams</u> case, the Supreme Court found that the double-edge nature of the evidence did not excuse counsel's deficient performance.  <u>See</u> 120 S. Ct. at 1514 ("Of course, not all of the additional evidence was favorable to Williams.").

11

could be considered by the jury only as an aggravating factor. While counsel's statement on relevancy was, as we noted, incorrect, the remaining question is whether this erroneous understanding fell below an objective standard of reasonableness at the time of Lewis's trial.[15]  With the issue thus framed, we turn to the standard for granting an evidentiary hearing.

"A defendant is entitled to an evidentiary hearing if he alleges facts that, if proved, would entitle him to relief, and the record reveals a genuine factual dispute as to the alleged facts."  Theriot v. Whitley, 18 F.3d 311, 315 (5th Cir. 1994). From our analysis of (Terry) Williams, Lewis has alleged facts that may entitle him to relief on the deficient performance of counsel claim.  Further, under the pre-AEDPA standards for granting an evidentiary hearing, we find that a question exists

_____

[15] From a quick review of pre-Penry Texas capital cases in this circuit, it appears that despite this dilemma, other trial counsel regularly investigated and pursued mitigation evidence as a matter of course, but for strategic reasons often decided against offering this evidence in the punishment phase.  See, e.g., Crane v. Johnson, 178 F.3d 309, 315 (5th Cir. 1999) ("All of the evidence that Crane contends should have been presented at the punishment phase of his trial had a double-edged quality. Trial counsel decided the evidence was potentially more harmful than helpful."); Washington v. Johnson, 90 F.3d 945, 953 (5th Cir. 1996) (after interviewing family and teachers and retaining investigator to develop mitigation evidence, counsel decided not to introduce mental health evidence); Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994) (counsel admitted in affidavit that he made a strategic decision not to introduce evidence of abuse). The question remaining for the evidentiary hearing is whether it can be said that Lewis's counsel undertook any strategic calculation or informed balancing about possible mitigating evidence.

about the reasonableness of counsel's punishment phase performance in the context of the Texas special issues statute, raising a substantial issue of material fact.[16] An evidentiary hearing is thus appropriate.[17]

To be entitled to an evidentiary hearing, Lewis must also allege facts that would entitle him to relief based on the prejudice prong of Strickland's ineffective assistance of counsel framework. Again, we are bound by the Supreme Court's decision in (Terry) Williams, which found that counsel's deficient performance "prejudiced Williams within the meaning of Strickland." 120 S. Ct. at 1516. The Court recognized that there existed "a reasonable probability that the result of the sentencing proceeding would have been different if competent counsel had presented and explained the significance of all the available evidence." Id. (Terry) Williams therefore cautions us not to dismiss the prejudicial effect of failure to investigate and introduce mitigation evidence in the punishment phase of a

---

[16] See 28 U.S.C. § 2254(d) (1994); Townsend v. Sain, 372 U.S. 293 (1963). "A federal habeas court must hold an evidentiary hearing if there are disputed facts and the petitioner did not receive a full and fair hearing in a state court, either at trial or in a collateral proceeding. This standard applies equally to ineffective assistance of counsel claims." Wiley v. Puckett, 969 F.2d 86, 98 (5th Cir. 1992) (citations omitted). Under the pre-AEDPA standard, we are satisfied that the prerequisites for an evidentiary hearing have been met.

[17] We note that there has never been an evidentiary hearing in state or federal court on this or any issue in Lewis's case.

13

capital case.  See id.  "Mitigating evidence unrelated to dangerousness may alter the jury's selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility case." Id. at 1516.

In evaluating whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 1502 (quoting Strickland, 466 U.S. at 694), the Court looked "to the totality of the available mitigating evidence," id. at 1515, and concluded that such "unprofessional service prejudiced Williams within the meaning of Strickland."  Id.  We find the omitted evidence in Lewis is similar in degree and kind to (Terry) Williams and, consequently, that Lewis has alleged facts that demonstrate prejudice and, thus, if proven in an evidentiary hearing, may entitle him to relief.[18]

However, as in our discussion on deficiency, our concern centers around the particular dilemma created by the Texas special issues statute.  In remanding this case, we charge the district court to determine under the then-existing Texas death penalty statute, and in light of (Terry) Williams, whether Lewis was prejudiced by counsel's failure to adequately investigate and

---

[18] We recognize that in (Terry) Williams, "prejudice" was found despite the existence of serious aggravating evidence, including several violent felony convictions and expert testimony that "Williams would pose a serious continuing threat to society."  (Terry) Williams, 120 S. Ct. at 1500.

14

present mitigating evidence in the punishment phase of his trial.

Therefore, we GRANT Lewis's petition for panel rehearing, VACATE section II.C of the panel opinion as to its discussion of the punishment phase ineffective assistance of counsel claims, VACATE the district court's judgment insofar as it denied habeas relief on Lewis's punishment phase ineffective assistance of counsel claims and REMAND to the district court with instructions to conduct a full evidentiary hearing solely on those claims. In all other respects, we DENY the petition for panel rehearing.

No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

15